[S.F. No. 24860. Dec. 29, 1986.]

GEORGE LLOYD POOL, Plaintiff and Respondent, v.
CITY OF OAKLAND et al., Defendants and Appellants.

1052

**COUNSEL**

Richard E. Winnie, City Attorney, Mark Shragge, Deputy City Attorney, David Weingard, Mintz, Giller, Himmelman & Mintz, David A. Himmelman and David S. Honler for Defendants and Appellants.

James E. Cox and Dan L. Garrett, Jr., for Plaintiff and Respondent.

**OPINION**

**BIRD, C. J.**—Do the facts presented to the jury below support a finding of negligence against defendant Safeway Stores, Inc. (Safeway) for the harm it caused when, as part of its campaign to detect counterfeit currency, it

reported to the police an erroneous and unsupported suspicion that a customer was tendering a counterfeit bill?

Does the trial court's error in instructing the jury on the issue of reasonable cause to arrest require reversal of the general verdict against defendant City of Oakland (Oakland)?

## I.[1]

On the afternoon of May 1, 1977, plaintiff George Lloyd Pool was arrested at a Safeway supermarket after tendering a $100 bill that did not bear the phrase "In God We Trust." The Safeway employee, believing the bill might be counterfeit, summoned the Oakland Police Department. The police eventually arrested Pool and held him in jail overnight. Mr. Pool's bill was not counterfeit, nor was he attempting to defraud Safeway.

The events leading to Pool's arrest occurred as follows.

In the week preceding the incident, Pool had cashed a paycheck at a local Wells Fargo bank. The bank issued him a few small bills and fifteen $100 bills. At least one of these $100 bills was from series 1950A—a series upon which the motto "In God We Trust" does not appear. The record shows that all valid $100 bills "of series dated through 1950" do not bear the words "In God We Trust."

At Safeway, Pool tendered such a bill to pay for approximately $7 worth of groceries. The checker told him to wait in line while she got his change. He waited patiently for about 10 minutes for the checker to return. However, a new checker took over the post. As Pool began to ask the new checker about his change, a store employee pointed him out to two uniformed Oakland police officers who immediately seized him by the arm and placed him in handcuffs.

The police had been summoned because Safeway was on the alert for counterfeit $100 bills. Apparently, Safeway stores in the Oakland area had been receiving an inordinate number of counterfeit $100 bills. All Safeway

---

[1]Conflicting testimony was presented to the jury as to many of the events at issue here. However, in this appeal from a jury verdict, this court's task "begins and ends with a determination as to whether there is *any* substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury." (*Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183], italics added; accord *Munoz* v. *Olin* (1979) 24 Cal.3d 629, 635-636 [156 Cal.Rptr. 727, 596 P.2d 1143] and authorities cited; see generally 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 278, p. 289-291.)

Therefore, this factual summary reflects Pool's version of the events. Conflicts in the evidence are noted only where pertinent.

employees in the Oakland area had been instructed to watch for such bills and to screen $100 bills for indicia of counterfeit status. This screening process was to include checking the serial number of the bill against a list of bogus serial numbers that Safeway had prepared.

When Pool presented his bill, the checker brought it to the cashier's booth for change and allowed the assistant manager to inspect it closely. The checker testified that she saw the assistant manager check the bill against the list of serial numbers. However, the assistant manager denied ever having seen such a list, although he said he had heard about it.

Safeway employees had also been instructed to look for the motto "In God We Trust" on $100 bills because Safeway management believed that bills lacking that motto might be counterfeit. No basis for this belief appears in the record. Indeed, if any inference may be drawn, it is that the lack of "In God We Trust" on $100 bills is *not* an indicium of counterfeit status. The police report states that valid *"bills of series dated through 1950 did not have 'In God We Trust' on the rear."* (Italics added.) Pool's bill was a "1950 Series A."

Nevertheless, when the assistant manager saw that "In God We Trust" was missing from Pool's bill, he treated the bill as a possible counterfeit, as instructed. He reported his suspicions to the police. When the police arrived, the assistant manager showed them Pool's "suspicious" bill, next to a "legitimate" bill—i.e., one of more recent vintage—to illustrate where the "missing" motto should be.

Mr. Pool, waiting in the checkout line, knew none of this. When the officers approached him, he protested that he had done nothing wrong and that he merely wanted to pay for his groceries or get his money back. The officers ignored his pleas.

One officer held Pool's wrist behind his back and threatened to break his arm. The officers asked Pool for identification, which he produced. They also asked him where he obtained the bill. At no time did they explain the nature of the problem. Pool continued to insist that he had done nothing wrong.

As the officers escorted Pool from the store with his arms behind his back and an officer holding each arm, he was shoved up against a cigarette machine. Apparently he did not suffer physical injuries. In the parking lot, the officers frisked Pool in public view, then pushed him into the back of a patrol car and took him to the police station. At no time did they advise him of his rights.

At the station, Pool was fingerprinted, photographed and subject to a strip search, which included a visual inspection of his rectum. It was not until this point that Pool learned he was suspected of passing counterfeit currency.

Within minutes after arriving at the police station, the officers determined that Pool's $100 bill was valid. The verification procedure consisted of calling a telephone service instituted by the Department of Treasury for this purpose. The entire process took less than six minutes.

Nevertheless, the police held Pool overnight on charges of interfering with a police investigation.[2] (Pen. Code, § 148.)[3] They offered Pool a chance to make a phone call, which he refused. Pool was released the following afternoon.

Pool brought an action against Safeway for negligent and intentional infliction of emotional distress, false arrest, and false imprisonment. Pool sued Oakland for false arrest, false imprisonment, assault and battery (i.e., using excessive force to effectuate the arrest), intentional infliction of emotional distress, and violation of his civil rights (42 U.S.C. §§ 1983, 1985).

The case was heard by a jury in 1981. At the close of plaintiff's case, Safeway moved for nonsuit under section 581c of the Code of Civil Procedure.[4] The trial court granted the motion as to all claims against Safeway, except the negligent infliction of emotional distress cause of action. Safeway made no objection to instructions given to the jury on the issue of negligent infliction of emotional distress.

---

[2]Both the police report and the officers' testimony allege that while the officers were escorting Pool from the store, he "flailed his arms" and attempted to grab his $100 bill, which was clipped to one officer's lapel. The officers claim that Pool was not placed in handcuffs until he began flailing his arms.

The arresting officer testified that Pool was arrested when he grabbed onto the cigarette machine and refused to let go as they were escorting him from the store. The police report makes no mention of the cigarette machine incident. The report states that Pool refused to let go of a shopping cart containing his groceries.

The Safeway checker testified that she observed the incident from a glass enclosed booth where she was taking her break. Although she heard some shouting, she did not see Pool flail his arms. She saw the police come up to Pool, grab him by the arms and escort him from the store. From her vantage point, Pool appeared to be cooperative.

[3]All further references are to the Penal Code unless otherwise noted.

[4]Code of Civil Procedure section 581c provides in relevant part: "(a) After the plaintiff has completed his or her opening statement, or the presentation of his or her evidence in a trial by jury, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a judgment of nonsuit.

"(b) If it appears that the evidence presented, or to be presented, supports the granting of the motion as to some but not all of the issues involved in the action, the court shall grant the motion as to those issues and the action shall proceed as to the issues remaining. . . ."

On its own motion, the court refused to instruct the jury on the civil rights claims against Oakland, finding no evidence of a city policy or conspiracy to deprive Pool of his civil rights. The court submitted the other claims against Oakland (assault and battery, false arrest and false imprisonment, and intentional infliction of emotional distress) to the jury. Oakland did not request special verdicts for each cause of action. However, Oakland did request fact-specific instructions on the issue of false arrest, which the trial court refused to deliver.

The jury returned a general verdict against each defendant and assessed damages at $45,000. Safeway moved for a judgment notwithstanding the verdict or in the alternative a new trial, claiming that the evidence did not support the jury's findings of negligence. Safeway also argued that the magnitude of the damage award indicated improper consideration of sympathy, passion or prejudice. Oakland moved for a new trial, claiming that the jury was improperly instructed on the charge of false arrest and that the damage award was excessive. The trial court denied both motions and this appeal followed.[5]

## II.

The discussion may be simplified by noting what is *not* at issue in this case. Safeway concedes that it owes its customers a duty of due care to avoid exposing them to foreseeable harms. (Cf. *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 923 [167 Cal.Rptr. 831, 616 P.2d 813] [hospital's duty to patient]; *Ewing* v. *Cloverleaf Bowl* (1978) 20 Cal.3d 389 [143 Cal.Rptr. 13, 572 P.2d 1155] [bartender's duty to bar patron]; *Bullis* v. *Security Pac. Nat. Bank* (1978) 21 Cal.3d 801, 813 [148 Cal.Rptr. 22, 582 P.2d 109] [bank's duty to customer to prevent misappropriation of funds]; *Weaver* v. *Bank of America* (1963) 59 Cal.2d 428, 431 [30 Cal.Rptr. 4, 380 P.2d 644] [bank's duty to customer to honor duly presented check].)[6] Safeway does not challenge the trial court's instructions explaining the due care standard to the jury. Safeway does not challenge the trial court's instructions

---

[5]Since hearing was granted before the effective date of Proposition 32 (Cal. Const., art. VI, § 12), all claims raised by both defendants are before this court.

[6]Since Safeway concedes that its conduct is to be judged under general negligence principles, the court expresses no opinion as to the effect or applicability of the holdings in *Turner* v. *Mellon* (1953) 41 Cal.2d 45 [257 P.2d 15], *Hughes* v. *Oreb* (1951) 36 Cal.2d 854 [228 P.2d 550], *Miller* v. *Fano* (1901) 134 Cal. 103 [66 P. 183], or *Ramsden* v. *Western Union* (1977) 71 Cal.App.3d 873 [138 Cal.Rptr. 426].

regarding the standard of care by which its conduct was to be judged.[7] (See *Molien* v. *Kaiser Foundation Hospitals, supra,* 27 Cal.3d at p. 923.)

 However, Safeway does argues that it satisfied that standard and that the jury's finding to the contrary is not supported by substantial evidence.

Pool counters with several theories under which the jury could have reasonably found Safeway negligent in this case. First, both Safeway employees who testified agreed that Safeway had published a list of serial numbers found on bogus bills. The checker testified that she saw the assistant manager check that list. From this the jury could infer either that the list was incorrect, or that the manager misread it. In either case a mistake was made and that mistake foreseeably led to Pool's injury.

A second theory assumes that the jury could have found credible the assistant manager's testimony that he never saw the list of serial numbers and did not check it. Under this version of the facts, the failure of Safeway to give the assistant manager a copy of the list was negligent, especially since he was in charge of the store that day.

Finally, regardless of the existence of the list, Safeway could be found liable for giving incomplete and misleading information regarding the "In God We Trust" motto. Safeway instructed its employees that bills without the words "In God We Trust" should be treated as potential counterfeits. Safeway failed to tell its employees that valid bills in current circulation lack that motto. Safeway could have told its employees which issues of $100 bills in circulation lack the motto, or instructed them to call the Treasury Department's service to verify the validity of any bills lacking the motto. Safeway took none of these steps. This carelessness resulted in the needless harassment and arrest of an innocent customer.

---

[7]The court instructed the jury as follows: "Negligence is the doing of something which a reasonably prudent person would not do or the failure to do something which a reasonably prudent person would do under circumstances similar to those shown by the evidence.

"It is the failure to use ordinary or reasonable care.

"Ordinary or reasonable care is that care which persons of ordinary prudence would use in order to avoid damages to themselves or others under circumstances similar to those shown by the evidence.

"You will note that the person whose conduct is set up as a standard is not the extraordinarily cautious individual, nor the exceptionally skillful one, but a person of reasonable and ordinary prudence.

"A test that is helpful in determining whether or not a person is negligent is to ask and answer whether or not if a person of ordinary prudence had been in the same situation and possessed of the same knowledge, he would have foreseen or anticipated that someone might have been damaged by or as a result of his action or inaction.

"If that answer is 'yes,' and if the action or inaction reasonably could be avoided, then not to avoid it would be negligence."

Having heard all of the evidence, the jury apparently agreed with some or all of Pool's reasoning and found Safeway negligent.

Safeway contends, however, that the record does not support the jury's verdict because Safeway discharged its duty of reasonable care by summoning the police when presented with a "suspect" $100 bill. Safeway argues that the police, not Safeway's employees, should have conducted an investigation of the bill's validity.

■ In reviewing these contentions, this court is guided by the rule that the trier of fact determines whether a defendant's conduct satisfies the applicable standard of care. (*Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 131 [211 Cal.Rptr. 356, 695 P.2d 653]; *Ewing* v. *Cloverleaf Bowl, supra,* 20 Cal.3d at p. 399; see generally, Prosser & Keeton, Torts (5th ed., 1984), § 37, pp. 236-237; Weiner, *The Civil Jury Trial and the Law-Fact Distinction* (1966) 54 Cal.L.Rev. 1867 [hereafter *Weiner*].) When reasonable minds may differ as to the reasonableness of defendant's conduct, neither the trial court nor an appellate court may substitute its own judgment and override the determination of the jury as the trier of fact. (*Schwartz* v. *Helms Bakery Limited* (1967) 67 Cal.2d 232, 244 [60 Cal.Rptr. 510, 430 P.2d 68]; Rest.2d Torts, § 328C, com. *b.*) Accordingly, to find that the jury erred, this court would have to find that Safeway's conduct "clearly has . . . conformed to what the community requires, and that no reasonable jury could reach a contrary conclusion." (Prosser & Keeton, *supra,* § 37, at p. 237; cf., *Ewing* v. *Cloverleaf Bowl, supra,* 20 Cal.3d at p. 398; *Mosley* v. *Arden Farms Co.* (1945) 26 Cal.2d 213, 217 [157 P.2d 372]; Rest.2d Torts, § 328B, subd. (d).)[8]

This court, then, must view the evidence most favorably to Pool[9] and determine whether a reasonable jury could have found that Safeway's conduct fell short of ordinary care.

■ Safeway had adopted a program to stop the passage of counterfeit bills in its Oakland stores. As a part of this program, Safeway instructed its employees that lack of the "In God We Trust" motto was an indicium of counterfeit status. However, the record contains no evidence to support Safeway's belief that the absence of the motto is a feature of counterfeit

---

[8]This threshold is reached only in "rare cases." (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 492, at p. 2756; see, e.g., *Richards* v. *Stanley* (1954) 43 Cal.2d 60 [271 P.2d 23].)

[9]See *ante,* footnote 1.

currency.[10] Legitimate currency without these words is in circulation.[11] Therefore, the jury could properly infer that the absence of the motto neither increased nor decreased the likelihood that Pool's bill was counterfeit.

Given the volume of Safeway's business, and the existence of valid bills lacking the "In God We Trust" motto, the jury could reasonably have found foreseeable that a customer would eventually present Safeway with a legitimate bill lacking the words "In God We Trust." Similarly, it was foreseeable that an innocent customer suspected of counterfeiting would be subjected to a police investigation, and perhaps arrested, and would suffer emotional distress as a result. Therefore, a reasonable jury could have concluded that Safeway should have foreseen it was creating such a risk in instructing its employees to treat a bill lacking the motto as a possible counterfeit.

The jury also could have found that Safeway had the ability to protect customers from this risk of harm with minimum effort. Safeway could have: (1) informed its employees that some valid bills lacked the "In God We Trust" legend; (2) prepared and distributed an accurate list of serial numbers found on counterfeit bills; and (3) instructed its employees to telephone the 24-hour Treasury Department service to check on the validity of suspect bills. The record shows that by calling the Treasury Department service the police were able to verify the legitimacy of Pool's bill within six minutes.

Merchants of Safeway's size presumably handle thousands of purchases by credit card or personal check each day. Safeway undoubtedly has established a means of verifying the validity of such transactions without the aid of repeated police intervention. Safeway does not contend that it is reasonable to summon the police whenever it is uncertain as to the validity of a customer's check or credit card. Presumably the preferred approach in such cases is to refuse to accept the questionable tender. Safeway does not explain why different standards should govern this case.

Each of the foregoing methods would have significantly reduced the risk of harm to Safeway customers and averted the incident in this case. These alternatives were not burdensome and would not have undermined Safeway's anticounterfeit program. Nevertheless, they were not employed.

Accordingly, a reasonable jury could have found, under the evidence presented in this case, that although Safeway should have "foreseen . . .

---

[10]Officer Phyllis Benally of the Oakland Police testified that her police academy training on the subject of counterfeit bills never instructed that the lack of "In God We Trust" was an indicium of counterfeit status.

[11]Pool's bill, and all $100 bills dated through series 1950 do not bear the motto. Pool obtained his bill from a bank the week before the incident at issue here.

that someone might have been damaged . . . as a result of [its] action," it did not act with that degree of care "which persons of ordinary prudence would use in order to avoid damages to . . . others . . . ." (See *ante,* fn. 7.) This court cannot disturb the jury's finding. (See *Schwartz* v. *Helms Bakery Limited, supra,* 67 Cal.2d at p. 244.)[12]

■ Safeway further contends that, even assuming it acted unreasonably, it is not liable because its negligence was not the proximate cause of Pool's injuries. According to Safeway, Pool's injuries were the result of an unforeseeable superseding cause. Safeway claims that it was unforeseeable that the police officers would fail to investigate thoroughly the validity of Pool's bill before deciding to arrest him. Had they done so, Safeway argues, no emotional harm would have befallen Pool.

■ Foreseeability, like reasonableness, is a question of fact for the jury. (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36]; *Bigbee* v. *Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 56 [192 Cal.Rptr. 857, 665 P.2d 947].) The jury's finding will not be disturbed if there is "'room for a reasonable difference of opinion.'" (*Ibid.,* quoting *Schrimscher* v. *Bryson* (1976) 58 Cal.App.3d 660, 664 [130 Cal.Rptr. 125].) ■ "'[F]oreseeability is not to be measured by what is more probable than not, but includes whatever is likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it in guiding practical conduct.'" (*Bigbee, supra,* 34 Cal.3d at p. 57, citation.)

Moreover, "what is required to be foreseeable is the general character of the event or harm . . . not its precise nature or manner of occurrence." (*Id.*

---

[12]This decision is in line with those of other states which have permitted a finding of liability against merchants who fail to take simple steps to allay suspicions before calling the police. (See, e.g., *Harrer* v. *Montgomery Ward & Co.* (1950) 124 Mont. 295 [221 P.2d 428, 432] [jury could have found merchant negligent for reporting customer to police as suspected check-forger without first asking for identification; "it could be found that the defendants were careless and negligent in calling the police and . . . acted without regard to plaintiff's rights and without reasonable cause"]; *S. H. Kress & Co.* v. *Bradshaw* (1940) 186 Okla. 588 [99 P.2d 508] [defendant liable where police arrested customer on merchant's erroneous conclusion that customer's half-dollar was counterfeit]; *Alsup* v. *Skaggs Drug Center* (1950) 203 Okla. 525 [223 P.2d 530] [cause of action stated where merchant summoned police rather than call suspected shoplifter's husband and employer for character references as she requested]; see also *Southwest Drug Stores of Mississippi, Inc.* v. *Garner* (Miss. 1967) 195 So.2d 837 [defendant merchant liable for slander where merchant failed to ask customer whether she paid for the soap before accusing her of stealing it]; *Lukas* v. *J.C. Penney Company* (1963) 233 Ore. 345 [378 P.2d 717, 725] [failure to make a detention in a reasonable manner and for a reasonable time is a jury question; failure to conduct reasonable investigation removes defense of probable cause]; *Gortarez* v. *Smitty's Super Valu, Inc.* (1984) 140 Ariz. 97 [680 P.2d 807, 814] [reasonableness of detention a jury question where facts in dispute are subject to different inferences]; *Stienbaugh* v. *Payless Drug Store, Inc.* (1965) 75 N.M. 118 [401 P.2d 104] [merchant liable for slander where no reasonable cause for detention and merchant pointed customer out as suspected shoplifter].)

at pp. 57-58; accord, *Hoyem* v. *Manhattan Beach City Sch. Dist.* (1978) 22 Cal.3d 508, 519 [150 Cal.Rptr. 1, 585 P.2d 851]; see generally Rest.2d Torts, § 435, com. *a.*) For that reason, a negligent defendant is liable for injuries brought about by an intervening cause of independent origin if the "intervening cause . . . was foreseeable by the defendant or, if not foreseeable, [if] it caused injury of a type which was foreseeable. If either [element is satisfied] then the defendant is not relieved of liability towards the plaintiff . . . ." (*Hoyem* v. *Manhattan Beach City Sch. Dist., supra,* 22 Cal.3d at p. 521.) ■ Therefore, if the injury to Pool was a foreseeable consequence of Safeway's call to the police and the resulting police intervention, the foreseeability of the police officers' incomplete investigation is irrelevant.

■ It is settled that being arrested by the police is one of the foreseeable consequences of reporting a transaction as illegal. (*Weaver* v. *Bank of America, supra,* 59 Cal.2d at pp. 433-434.)[13] Likewise, accusing an innocent customer of felonious conduct and calling in the police could foreseeably lead to a police investigation, escalation of the conflict, and arrest, all of which would cause emotional distress. (See, e.g., *Harrer* v. *Montgomery Ward & Co., supra,* 221 P.2d 428.) ■ Therefore, a jury could reasonably conclude that when Safeway reported to the police its unsupported suspicion that Pool's $100 was counterfeit, it created a foreseeable risk that an innocent customer would suffer emotional distress at the hands of the police.

Since the resulting injuries were foreseeable, the acts of the police officers—even if wrongful—do not relieve Safeway of liability for Pool's injuries. (See *Hoyem* v. *Manhattan Beach City Sch. Dist., supra,* 22 Cal.3d at p. 521; *Blecker* v. *Wolbart* (1985) 167 Cal.App.3d 1195, 1201-1202 [213

---

[13]In *Weaver,* defendant Bank of America sought to avoid liability for injuries it caused by wrongfully reporting a checking account to be invalid. A person sought to purchase items at a store by tendering a check drawn upon his Bank of America checking account. When the store contacted the bank to verify the validity of the check, the bank reported the account closed. The merchant then summoned the police, who arrested the plaintiff.

Plaintiff sought damages against Bank of America for his arrest. The bank claimed that it could not be held liable because the store owner's act of calling the police and the police arrest were superseding causes of the plaintiff's injury.

This court held that plaintiff could recover in tort against the negligent bank. The court reasoned that it could not hold "as a matter of law that the intervening arrest was so remote a possibility that the bank could not reasonably have foreseen it. . . . '[B]y the exercise of reasonable diligence, the bank could have foreseen that this exact consequence would occur, for the issuance of a check upon a bank without funds or credit to meet it is a public offense which, notoriously, frequently results in the arrest and imprisonment of the drawer of the check.'" (59 Cal.2d at p. 434, quoting *Mouse* v. *Central Savings & Trust Co.* (1929) 120 Ohio St. 599 [167 N.E. 868, 870].)

Cal.Rptr. 781].)[14] Thus, this court cannot say, as a matter of law, that Pool's emotional distress was not a foreseeable risk created by Safeway's failure to exercise due care in reporting suspicions of felonious conduct to the police. The evidence supports the jury's finding that Safeway's negligence was a proximate cause of Pool's emotional distress.

■ Safeway's final argument for overturning the jury's negligence finding is that its status as a merchant entitles it to special protection. Safeway relies on the merchant's statutory privilege to detain a customer—for the purposes of conducting a reasonable investigation—upon probable cause to suspect shoplifting. (Former § 490.5, subd. (e); Stats. 1976, ch. 1131, § 1, p. 5048;[15] see also *Collyer* v. *S.H. Kress & Co.* (1936) 5 Cal.2d 175 [54 P.2d 20]; *Cervantez* v. *J.C. Penney Co.* (1979) 24 Cal.3d 579, 589-590 [156 Cal.Rptr. 198, 595 P.2d 975]; Rest.2d Torts, § 120A.) Safeway argues that section 490.5 "evidence[s] a public recognition of a merchant's need to guard against law violations where circumstances portend a *reasonable* belief that illegal activity is afoot."

Safeway did not raise this argument below. Nor did it request jury instructions embodying these principles. Its contention, therefore, may not

---

[14]Although the misconduct of the Oakland police does not relieve Safeway of joint and several liability for Pool's injury, Safeway might have minimized its ultimate loss by forcing Oakland to contribute the lion's share of the damages. Oakland might have been found primarily responsible for Pool's injury had Safeway requested instructions ordering the jury to apportion the degree of fault between itself and Oakland (see *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226]; *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899]), or filed a separate action for comparative indemnity against Oakland (*E.L. White, Inc.* v. *City of Huntington Beach* (1978) 21 Cal.3d 497, 510 [146 Cal.Rptr. 614, 579 P.2d 505]; *Teachers Insurance Co.* v. *Smith* (1982) 128 Cal.App.3d 862, 865 [180 Cal.Rptr. 701]; *County of Riverside* v. *Loma Linda University* (1981) 118 Cal.App.3d 300, 315 [173 Cal.Rptr. 371]; *American Bankers Ins. Co.* v. *Avco-Lycoming Division* (1979) 97 Cal.App.3d 732, 734 [159 Cal.Rptr. 70]) within the applicable time limits (Gov. Code, § 901 [actions for indemnity against public entity accrue on date defendant served with complaint]).

[15]Former section 490.5, subdivision (e) provided in relevant part: "(e)(1) A merchant may detain a person for a reasonable time for the purpose of conducting an investigation in a reasonable manner whenever the merchant has probable cause to believe the person to be detained is attempting to unlawfully take or has unlawfully taken merchandise from the merchant's premises.

"(2) In making the detention a merchant may use a reasonable amount of nondeadly force necessary to protect himself and to prevent escape of the person detained or the loss of property.

"(3) During the period of detention any items which a merchant has reasonable cause to believe are unlawfully taken from his premises and which are in plain view may be examined by the merchant for the purposes of ascertaining the ownership thereof.

"(4) In any action for false arrest, false imprisonment, slander or unlawful detention brought by any person detained by a merchant, it shall be a defense to such action that the merchant detaining such person had probable cause to believe that the person had stolen or attempted to steal merchandise and that the merchant acted reasonably under all the circumstances."

be raised for the first time on appeal. (*Estate of Westerman* (1968) 68 Cal.2d 267, 279 [66 Cal.Rptr. 29, 437 P.2d 517]; see also *Willden* v. *Washington Nat. Ins. Co.* (1976) 18 Cal.3d 631, 636, fn. 5 [135 Cal.Rptr. 69, 557 P.2d 501]; *Sea & Sage Audubon Society, Inc.* v. *Planning Com.* (1983) 34 Cal.3d 412, 417 [194 Cal.Rptr. 357, 668 P.2d 664] [appellate consideration of "purely legal" issues not raised at trial permissible only if facts undisputed]; *Downing* v. *Barrett Mobile Home Transport, Inc.* (1974) 38 Cal.App.3d 519, 523 [113 Cal.Rptr. 277].)

However, even if this court were to consider the merchant's privilege issue, Pool's recovery here would not be precluded. The plain language of former section 490.5 refers only to "detentions"; it does not grant protection from liability for summoning the police.[16] Furthermore, assuming such protection was available, Safeway has presented no evidence that it had the requisite probable cause to believe that Pool's bill was counterfeit.

■ Safeway's next arguments concern the issue of damages. Safeway argues that the court should have instructed the jury that Pool's failure to make a phone call from jail may have constituted contributory negligence. However, Pool's failure to seek his release from jail was not contributorily negligent, because it did not contribute as a cause of his underlying injuries. "[C]ontributory negligence is negligence of the plaintiff before any damage, or any invasion of his rights, has occurred . . . ." (Prosser, *supra,* at p. 458; see also BAJI No. 3.50 (7th ed. 1986) p. 77.) The fact that Pool refused to make a phone call would be relevant, if at all, to a claim that Pool failed to mitigate the damages he suffered as a result of Safeway's negligence and Oakland's subsequent misconduct. "The rule of [mitigation of damages] comes into play after a legal wrong has occurred, but while some damages may still be averted . . . ." (Prosser, *supra,* at p. 458; see also *Valencia* v. *Shell Oil Co.* (1944) 23 Cal.2d 840, 844 [147 P.2d 558]; *Jarchow* v. *Transamerica Title Ins. Co.* (1975) 48 Cal.App.3d 917, 949-950 [122 Cal.Rptr. 470]; see generally 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 870, p. 3158; BAJI No. 14.67.)

Although Safeway requested a general instruction on contributory negligence, it failed to request an instruction on mitigation of damages. (Cf.

---

[16]In 1977, at the time of the events at issue here, section 490.5, subdivision (e)(1) provided that a merchant could "*detain* a person for a reasonable time for the purpose of conducting an investigation in a reasonable manner" if the merchant had "probable cause" to believe the person was "attempting to unlawfully take or ha[d] unlawfully taken merchandise from the merchant's premises." (Italics added.) The statute further provided a defense to "any action for false arrest, false imprisonment, slander or unlawful *detention* brought by any person *detained*," if the merchant "[(1)] had *probable cause* to believe that the person had stolen or attempted to steal merchandise *and* [(2)] [if] the merchant *acted reasonably under all the circumstances*." (§ 490.5, subd. (e)(4); Stats. 1976, ch. 1131, § 1, p. 5049, italics added.) Safeway's contention that the statute expressly permits a merchant "to summon the 'police' on reasonable cause" is wholly without merit.

BAJI No. 3.50, *supra* [contributory negligence instructions], with BAJI Nos. 14.67, 14.68 [mitigation of damages instructions]; see generally 4 Witkin, *supra,* § 870, pp. 3158-3159; *id.* (1984 supp.) §§ 737A-737C, pp. 412-418.) Generally, "in a civil case, each of the parties must propose complete and comprehensive instructions in accordance with his theory of the litigation; if the parties do not do so, the court has no duty to instruct on its own motion." (*Downing* v. *Barrett Mobile Home Transport, Inc., supra,* 38 Cal.App.3d 519, 523; accord, *Agarwal* v. *Johnson* (1979) 25 Cal.3d 932, 950-951 [160 Cal.Rptr. 141, 603 P.2d 58]; *Willden* v. *Washington Nat. Ins. Co., supra,* 18 Cal.3d 631, 636; see also *Barrera* v. *De La Torre* (1957) 48 Cal.2d 166, 170 [308 P.2d 724]; 7 Witkin, Cal. Procedure (3d ed. 1985) Trial, § 242, p. 248 [failure to propose instructions at trial precludes the party's right to raise the issue on appeal].) However, as to the measure of damages, there is some authority to the effect that a judge is required to give the proper instructions, sua sponte. (See *Agarwal* v. *Johnson, supra,* 25 Cal.3d at p. 951, citing *Pepper* v. *Underwood* (1975) 48 Cal.App.3d 698, 708-709 [122 Cal.Rptr. 343], overruled on other grounds in *Stout* v. *Turney* (1978) 22 Cal.3d 718, 730 [150 Cal.Rptr. 637, 586 P.2d 1228].)

However, the court need not reach this issue. Safeway presented no evidence to support its theory that a phone call would have shortened Pool's stay in jail. Therefore, the jury would have had no means of determining whether, and to what extent, a phone call would have reduced Pool's damages. Accordingly, Safeway was not entitled to a mitigation of damages instruction.

Safeway's final contention is that the jury's award of $45,000 is plainly excessive in light of the injuries Pool suffered. Oakland raised an identical claim. Defendants argue that the size of the verdict indicates that the jury was motivated by passion and prejudice.

"[A] reviewing court must give considerable deference in matters relating to damages to the jury in the first instance and to the trial court secondarily." (*Merlo* v. *Standard Life & Acc. Ins. Co.* (1976) 59 Cal.App.3d 5, 17 [130 Cal.Rptr. 414]; see *Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 64 [118 Cal.Rptr. 184, 529 P.2d 608].) The trial court's ruling is entitled to deference "because having been present at the trial, the trial judge was necessarily more familiar with the evidence." (*Ibid.*) Here the jury found that Pool's injuries warranted an award of $45,000. The trial court found sufficient evidence to support the award and denied defendant's motion for new trial on this issue.[17]

---

[17]Safeway points to several cases in which damage awards of less than $45,000 for

The evidence showed that Pool was 56 years old at the time of the incident and had never been arrested. His testimony indicated that he suffered great indignity and humiliation from his confrontation with the police, in front of both Safeway customers and passersby in the parking lot. He suffered further indignity in the booking, fingerprinting, and photographing process. He testified that he was particularly distressed as a result of being subjected to a strip search and visual inspection of his rectum.

Pool also testified that he suffered lingering effects from his ordeal. His doctor informed him that his blood pressure was higher and his heartbeat was irregular after the incident. Pool testified that he would never forget the incident as long as he lived.

In light of this evidence, the jury award cannot be said to be " " " "so grossly disproportionate as to raise a presumption that it is the result of passion or prejudice." " " " (*Bertero* v. *National General Corp., supra,* 13 Cal.3d at p. 64, quoting *Cunningham* v. *Simpson* (1969) 1 Cal.3d 301, 308-309 [81 Cal.Rptr. 855, 461 P.2d 39].) Accordingly, this court should not disturb the jury's award.

In sum, the jury's determination that Safeway acted negligently in calling the police is not unreasonable as a matter of law. Moreover, neither of Safeway's claimed defenses withstand scrutiny. First, the police action here was not an unforeseeable "superseding cause" of Pool's injury as a matter of law. Second, the so-called "merchants' privilege" does not protect Safeway, because Safeway failed to raise the issue at trial and, at any rate, the privilege does not bar liability for calling the police. Finally, the jury verdict was not excessive as a matter of law. Therefore, this court will affirm the judgment against Safeway.

## III.

 Oakland contends that the jury's general verdict should be overturned because the trial court improperly instructed the jury on the false

---

nonphysical harm were found to be excessive. However, "there is no fixed or absolute standard by which to compute the monetary value of emotional distress." (*Merlo* v. *Standard Life & Acc. Ins. Co., supra,* 59 Cal.App.3d at p. 17; accord *Bertero* v. *National General Corp., supra,* 13 Cal.3d at p. 64.) Therefore, citation to awards in other cases is of no value to the court in assessing the propriety of damages in this case. (See *id.* at p. 65, fn. 12.)

arrest cause of action. According to Oakland, the trial court erred in submitting the question of probable, or reasonable, cause to the jury.[18]

The law is clear that the question of probable cause to arrest is a legal issue to be decided by the trial court. (*Roberts* v. *City of Los Angeles* (1980) 109 Cal.App.3d 625, 629-630 [167 Cal.Rptr. 320]; *Gibson* v. *J.C. Penney Co., Inc.* (1958) 165 Cal.App.2d 640, 645 [331 P.2d 1057]; *Aitken* v. *White* (1949) 93 Cal.App.2d 134, 141 [208 P.2d 788].) The trier of fact's function in false arrest cases is to resolve conflicts in the evidence. Accordingly, where the evidence is conflicting with respect to probable cause, "'it [is] the duty of the court to instruct the jury as to what facts, if established, would constitute probable cause.'" (*Gibson, supra,* 165 Cal.App.2d at p. 645; *Roberts, supra,* 109 Cal.App.3d at p. 630; *Aitken, supra,* 93 Cal.App.2d at p. 141.) The jury then decides whether the evidence supports the necessary factual findings.

However, the existence of instructional error alone is insufficient to overturn a jury verdict. A defendant must also show that the error was prejudicial (Code Civ. Proc., § 475) and resulted in a "miscarriage of justice" (Cal. Const., art. VI, § 13). (See 9 Witkin, Cal. Procedure, *supra,* Appeal, § 324, pp. 334-335.) "'[A] "miscarriage of justice" should be declared only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.'" (*Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752, 770 [206 Cal.Rptr. 354, 686 P.2d 1158].)

Here Oakland argues that the error was prejudicial because "the jury may well have agreed with evidence favorable to defendants supporting a factual finding of reasonable cause, but found liability by misapplying the *legal* standard for reasonable cause."

Recent cases have set forth several factors to be considered in determining whether an error prejudicially affected the verdict: "(1) the

---

[18]The following instructions were given seriatim: "A false arrest is the unlawful taking of a person into custody.

"Now, a peace officer may, without a warrant, lawfully arrest a person whenever he has reasonable cause to believe that the person to be arrested has committed a criminal offense.

"Now, to constitute reasonable cause for the arrest of the plaintiff in this case, the evidence must establish that the police officers had reasonable cause to believe that the plaintiff committed a criminal offense.

"If you find from all the evidence that the foregoing fact is true, you must find that there was reasonable cause to arrest the plaintiff.

"If you find that such fact is not true, you must find that there was not reasonable cause to arrest him."

degree of conflict in the evidence on critical issues [citations]; (2) whether respondent's argument to the jury may have contributed to the instruction's misleading effect [citation]; (3) whether the jury requested a rereading of the erroneous instruction [citation] or of related evidence [citation]; (4) the closeness of the jury's verdict [citation]; and (5) the effect of other instructions in remedying the error [citations]." (*LeMons* v. *Regents of University of California* (1978) 21 Cal.3d 869, 876 [148 Cal.Rptr. 355, 582 P.2d 946]; *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.*, *supra*, 36 Cal.3d at p. 771.)

 As to the first factor, "the degree of conflict in the evidence on critical issues," the only critical issue was whether the Oakland police had reasonable cause to arrest Pool for "willfully resist[ing], delay[ing], or obstruct[ing]" them in the discharge of their duties. (§ 148.)[19] The police officers had such cause if they believed that Pool swung at them or otherwise resisted their efforts to take him outside. (Cf. *In re Joe R.* (1970) 12 Cal.App.3d 80, 83-84, 86 [90 Cal.Rptr. 530] [obstruction found where defendant, inter alia, hit officer and attempted to flee].) Although the police testified that Pool also shouted obscenities and threw his identification on the checkout counter, these alleged actions would not constitute a violation of section 148 because neither would have "actively impeded an officer in the performance of his duty." (See *People* v. *Allen* (1980) 109 Cal.App.3d 981, 987, fn. 1 [167 Cal.Rptr. 502]; see also *District of Columbia* v. *Little* (1950) 339 U.S. 1, 6 [94 L.Ed. 599, 603, 70 S.Ct. 460] ["Although force or threatened force is not always an indispensible ingredient of the offense of interfering with an officer in the discharge of his duties, mere remonstrances or even criticisms of an officer are not usually held to be the equivalent of unlawful interference"]; cases collected in Annot. (1972) 44 A.L.R.3d 1018, 1033-1036.)

Pool emphatically denied ever "flailing his arms," swinging at an officer, or refusing to leave the store when ordered. Although he was admittedly upset and protested his innocence, he produced identification upon request and left the store with the officers when ordered to do so. According to the police, Pool flailed his arms and attempted to either swing at one of the officers or grab his $100 bill from the lapel of one of the officers. One officer testified that Pool also refused to let go of a cigarette machine as they were attempting to escort him out of the store. The police report does

---

[19]Section 148 provides that: "Every person who willfully resists, delays, or obstructs any public officer or peace officer, in the discharge or attempt to discharge any duty of his office, when no other punishment is prescribed, is punishable by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not exceeding one year, or by both such fine and imprisonment."

not mention the cigarette machine incident, but alleges that Pool refused to let go of a shopping cart.

Were this the only evidence presented on the matter, a conflict would be present and a finding that the instructional error was prejudicial might be supportable. However, the only neutral witness, the Safeway checker, agreed with Pool's version of the facts. She observed the officers leading Pool out of the store and testified that Pool was not flailing his arms and appeared to be cooperating the whole time.

Since Pool's version of the facts was confirmed by the only neutral witness, it is likely that the jury resolved the conflict in critical issues in Pool's favor. If so, the jury properly held Oakland liable because there was no reasonable cause for arrest under Pool's version of the facts. Thus, the first factor does not support a finding of prejudice.

Turning to the second factor, it does not appear that the arguments to the jury "'contributed to the instruction's misleading effect . . .'" (*Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co., supra,* 36 Cal.3d at p. 771.) To the contrary, it appears that counsels' arguments significantly reduced any prejudicial effect the erroneous instruction might have had. Both parties' closing arguments on the issue of reasonable cause focused the jury's attention on the critical facts needed to support a finding that the arrest was improper.

Oakland's closing argument was limited to persuading the jury that the police officers' version of the facts was true and that Pool was lying. The jury was read the text of section 148 and specifically informed that the critical fact was whether the officers thought Pool was swinging at them. As expressed to the jury, Oakland's case hinged on the finding that Pool "attempted to either strike Officer Gallaway or retrieve the bill or appeared to be doing one of those acts."

Pool agreed with Oakland's argument that if he flailed his arms or grabbed for the $100 bill, i.e., appeared to be striking the officers, the arrest was proper. However, he argued that the officers were lying, and that the jury should believe the checker's testimony that Pool cooperated with the police as they led him from the store. Pool's attorney concluded his argument to the jury stating: "Mr. Pool isn't going to fight the policeman at 56 or 60, whatever his age at the time, not in this town, not in that area. He cooperated."

In sum, both parties suggested to the jury that if it believed the officers' version of the facts, Oakland was not liable for false arrest. Thus, the closing

arguments significantly minimized the effect of the incorrect instruction on reasonable cause. By focusing the jury's attention on the facts critical to a finding of reasonable cause, the parties implicitly informed the jury that acceptance of Oakland's version of the facts was necessary to a verdict in Oakland's favor. As such, the parties substantially reduced the possibility that the jury believed Oakland and yet found Oakland liable. Accordingly, the second *Seaman's* factor weighs against a finding of prejudice.

An assessment of factors (3) through (5) further indicates that the instructional error had little prejudicial effect. Since the jury did not ask for further instructions, factor (3) argues against finding prejudice because the jury did not ask for a rereading of the reasonable cause instruction or evidence relating to that issue. Factor (4) also weighs against prejudice because the jury's 11-to-1 verdict was a clear victory for Pool.

Finally, the fifth *Seaman's* factor is "'the effect of other instructions in remedying the error . . . .'" (*Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co., supra,* 36 Cal.3d at p. 771.) Since none of the other instructions pertained to reasonable cause, they could not have remedied the instructional error. Therefore, the fifth factor weighs in favor of finding prejudice.

Since this case involves multiple causes of action, one consideration in addition to those listed in *Seaman's* weighs against a finding of prejudice. The jury here rendered a general verdict against Oakland after being instructed on several causes of action—assault and battery, intentional infliction of emotional distress, and false arrest and imprisonment. Oakland alleges instructional error only as to the false arrest cause of action. Oakland did not ask for a special verdict. Therefore, this court does not know which cause of action the jury relied on in finding liability. If the jury relied on a theory other than false arrest, the instructional error is irrelevant and clearly not prejudicial. This further reduces the likelihood that the result would have been favorable to Oakland absent the improper reasonable cause instruction.

As discussed above, an appellate court may reverse for instructional error only if it is reasonably probable that a different result would have occurred in the absence of the error. (*Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co., supra,* 36 Cal.3d at p. 770.) Reviewing this record in light of the factors set forth above, it does not appear that the jury would have ruled in Oakland's favor had it been properly instructed.

The parties' closing arguments focused the jury's attention on the critical facts and suggested that acceptance of Oakland's version of the facts was

necessary to a finding of reasonable cause. Also, the only neutral witness supported Pool's version of the facts. Therefore it is not reasonably probable that the jury believed Oakland but ruled in Pool's favor. Oakland has given no reason to suspect that this occurred. Accordingly, the general verdict against Oakland will be affirmed.

## IV.

When Safeway undertook a campaign to detect counterfeit currency, it also accepted a duty to exercise due care to avoid subjecting innocent customers to the emotional distress of a public confrontation with police officers. The jury reasonably concluded that Safeway failed to discharge that duty.

The record shows that Safeway gave its employees incomplete, and possibly incorrect, information about the validity of $100 bills lacking the motto "In God We Trust." Safeway thereby created the risk that an innocent customer would be wrongly suspected of committing a felony. Although this risk was foreseeable, Safeway failed to utilize easily available means by which it could have avoided the potential harm. Therefore, the evidence is sufficient to support the jury's finding of negligence.

Furthermore, the conduct of the Oakland police is not a superseding cause of Pool's injury such that Safeway is relieved of liability for its negligence. It is foreseeable that Safeway's call to the police and the resulting police intervention would cause emotional distress to an innocent customer suspected of criminal wrongdoing.

Additionally, the instructional error on the false arrest cause of action does not require reversal of the general verdict against Oakland. In light of the fact-specific nature of the parties' closing arguments, and the neutral witness's corroboration of Pool's testimony, it is not reasonably probable that the jury believed Oakland yet found in favor of Pool. Therefore, the error was not prejudicial. Finally, the $45,000 damage award against Safeway and Oakland is not excessive as a matter of law.

Accordingly, the judgments against Safeway and Oakland are affirmed.

Mosk, J., Broussard, J., Reynoso, J., and Panelli, J., concurred.

**GRODIN, J.**—I concur in the judgment, but wish to make clear my understanding of the narrow basis of the majority opinion's holding with respect to the liability of Safeway. As I read the opinion, the majority does not purport to hold that under general principles of California law a store

owner—or, for that matter, any other private individual—may ordinarily be held liable in tort for simply reporting suspected misconduct to the police. In recognition of the strong public policy in favor of encouraging citizens to report such suspicions to the police—thereby permitting the police to determine whether further action is justified—past California cases have in effect held that such conduct is "conditionally privileged," so that even if an individual is negligent in concluding that a crime has actually occurred or in identifying the perpetrator, he will incur no liability for simply reporting his suspicions so long as he is acting in good faith. (See, e.g., *Peterson* v. *Robinson* (1954) 43 Cal.2d 690, 695 [277 P.2d 19]; *Turner* v. *Mellon* (1953) 41 Cal.2d 45, 48-49 [257 P.2d 15]; *Hughes* v. *Oreb* (1951) 36 Cal.2d 854, 859 [228 P.2d 550]; *Gogue* v. *McDonald* (1950) 35 Cal.2d 482, 484-487 [218 P.2d 542]; *Miller* v. *Fano* (1901) 134 Cal. 103, 106-107 [66 P. 183]. See generally 1 Harper et al., The Law of Torts (2d ed. 1986) § 4.11, pp. 512-513; Prosser & Keeton on Torts (5th ed. 1984) §§ 11, 119, pp. 52, 872-873.) The majority does not take issue with these authorities, but refrains from applying them here simply because Safeway never relied on these precedents, or the principle of law embodied therein, either at trial or on appeal.

As the majority notes, with respect to Safeway's liability the case was submitted to the jury solely on a negligent-infliction-of-emotional-distress theory. Safeway's sole argument on appeal is that the evidence at trial is insufficient as a matter of law to support a verdict on that theory. I agree with the majority that, on the assumption that the ordinary elements of the tort of negligent infliction of emotional distress are applicable here, the evidence is sufficient to support the verdict. That assumption—the validity of which is not at issue here—is reflected in the instructions to the jury to which Safeway did not object.

Because of the narrow basis of the majority's ruling, I concur in the judgment.

Lucas, J., concurred.