Filed 6/25/13  Mason v. Presbytery of San Francisco CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CAROLINE MASON, | |
| Plaintiff and Appellant, | A135185 |
| v. | |
| THE PRESBYTERY OF SAN FRANCISCO, | (Alameda County Super. Ct. No. RG11574490) |
| Defendant and Respondent. | |

Plaintiff Caroline Mason (appellant) appeals from the trial court's judgment following its order sustaining, without leave to amend, the demurrer of defendant The Presbytery of San Francisco (respondent) to her first amended complaint.  We affirm.

## BACKGROUND[1]

In 1996, appellant commenced respondent's process to become a minister.  She alleges she did so pursuant to a contract entitled the "1996 Steps and Procedures" manual (Manual).  The Manual provided that when a candidate received a "call" to ministry, the

---

[1]   In this appeal from the judgment following the trial court's order sustaining respondent's demurrer, this court is obligated to " 'treat the demurrer as admitting all material facts which were properly pleaded.' " (*Total Call Internat., Inc. v. Peerless Ins. Co.* (2010) 181 Cal.App.4th 161, 166 (*Total Call*).)  Our factual summary reflects this standard of review.  (See *Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1056, fn. 1.)

1

file containing all the materials accumulated during the course of the candidacy would be provided to the candidate.

Appellant's candidacy was terminated at a hearing in March 2006. Subsequently, appellant requested that respondent provide her with her candidacy file, but respondent refused. On August 2, 2010, respondent refused in writing to provide appellant the file.

In May 2011, appellant filed a lawsuit against respondent alleging a claim for breach of contract. Among other things, she alleged respondent's refusal to provide her candidacy file to her was a breach of contract. Respondent demurred to the complaint and appellant filed a first amended complaint (FAC) prior to the trial court's ruling on the demurrer. The FAC contains two causes of action for breach of contract. The FAC requests that appellant's entire candidacy file be provided to her and seeks $400,000 for lost wages and $700,000 for punitive and medical damages.

Respondent demurred to the FAC and the trial court sustained the demurrer without leave to amend. The court concluded that appellant "failed to allege sufficient facts that clearly and specifically state a cognizable claim(s) against [respondent] or a claim that is not barred by the 'ecclesiastical' rule." The court entered judgment in respondent's favor. This appeal followed.

DISCUSSION

Appellant contends the trial court erred in concluding her breach of contract claim relating to access to her candidacy file is barred by the "rule of deference to ecclesiastical decisions." (*Iglesia Evangelica Latina, Inc. v. Southern Pacific Latin American Dist. of Assemblies of God* (2009) 173 Cal.App.4th 420, 440.)[2]

I. *Standard of Review*

On appeal, we " 'review the complaint de novo to determine whether or not [it] alleges facts sufficient to state a cause of action under any legal theory, [citation], or in

---

[2]   Appellant does not contend the trial court erred in concluding she failed to state a claim with respect to any other aspects of her breach of contract claims. Any such contention has been forfeited. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.)

2

other words, to determine whether or not the trial court erroneously sustained the demurrer as a matter of law. [Citation.]' [Citation.]" (*Total Call*, *supra*, 181 Cal.App.4th at p. 166.) " 'We treat the demurrer as admitting all material facts which were properly pleaded. [Citation.] However, we will not assume the truth of contentions, deductions, or conclusions of fact or law [citation], and we may disregard any allegations that are contrary to the law or to a fact of which judicial notice may be taken. [Citation.]' [Citation.]" (*Ibid.*)

II. *The Rule of Ecclesiastical Deference*

"The First and Fourteenth Amendments of the federal Constitution—and their counterpart in the California Constitution (Cal. Const., art. I, § 4)—impose limitations on the jurisdiction of civil courts over the internal affairs and administration of ecclesiastical institutions. The scope of these limitations depends on a number of factors, including whether a given church is hierarchical or congregational and the nature of the specific matters in dispute in a given case." (*Concord Christian Center v. Open Bible Standard Churches* (2005) 132 Cal.App.4th 1396, 1409 (*Concord Christian*).)

The California Supreme Court recently summarized the contours of this rule of deference to ecclesiastical decisions in the context of a church property dispute; the principles articulated by the court are equally applicable in the context of appellant's contract claim: "Decisions from both this court and the United States Supreme Court have made clear that, when asked to do so, secular courts may, indeed must, resolve internal church disputes over ownership of church property. As the high court put it in the seminal 19th-century case involving a church property dispute, 'an appeal is made to the secular authority; the courts when so called on must perform their functions as in other cases. [¶] Religious organizations come before us in the same attitude as other voluntary associations for benevolent or charitable purposes, and their rights of property, or of contract, are equally under the protection of the law, and the actions of their members subject to its restraints.' [Citation.] Similarly, in its most recent decision involving a church property dispute, the court stated, 'There can be little doubt about the general authority of civil courts to resolve this question. The State has an obvious and

3

legitimate interest in the peaceful resolution of property disputes, and in providing a civil forum where the ownership of church property can be determined conclusively.' [Citations.]

"But when called on to resolve church property disputes, secular courts must not entangle themselves in disputes over church doctrine or infringe on the right to free exercise of religion. In this regard, the United States Supreme Court has made two points clear: (1) how state courts resolve church property disputes is a matter of state law; but (2) the method a state chooses must not violate the First Amendment to the United States Constitution. '[T]he First Amendment prohibits civil courts from resolving church property disputes on the basis of religious doctrine and practice. [Citations.] As a corollary to this commandment, the Amendment requires that civil courts defer to the resolution of issues of religious doctrine or polity by the highest court of a hierarchical church organization. [Citations.] Subject to these limitations, however, the First Amendment does not dictate that a State must follow a particular method of resolving church property disputes. Indeed, "a State may adopt *any* one of various approaches for settling church property disputes so long as it involves no consideration of doctrinal matters, whether the ritual and liturgy of worship or the tenets of faith." ' [Citation.]" (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 478-479, fn. omitted.)

III. *Application of the Rule of Ecclesiastical Deference in the Present Case*

Respondent contends the civil courts lack jurisdiction over appellant's contract claim because it involves the resolution of ecclesiastical matters. The following language from *Concord Christian*, *supra*, 132 Cal.App.4th at page 1411, again in the property law context, is instructive: "Civil courts may employ ' "neutral principles of law, developed for use in all property disputes," ' as the basis for resolving [property] disputes, *unless* this determination depends on the resolution of an ecclesiastical controversy over religious doctrine, practice or polity. [Citations.] Difficulties arise when application of the neutral principles approach to a particular dispute requires a civil court to examine the governing documents of a religious organization, such as a church constitution, articles of incorporation, bylaws or instruments of property ownership. To the extent the

4

interpretation or construction of these documents involves the resolution of a matter of ecclesiastical doctrine, polity or administration, the civil court must defer to the resolution of the issue by the 'authoritative ecclesiastical body.' [Citation.] Significantly, such ecclesiastical matters include not only issues of religious doctrine per se, but also issues of membership, clergy credentials and discipline, and church polity and administration. [Citations.]"

In the present case, appellant claims she entered into a contract with respondent which required respondent to provide her candidacy file to her at the end of the candidacy process, which in this case ended in termination of her candidacy. To resolve the present case, we need not decide whether such contract claims necessarily require the courts to become entangled in questions of religious doctrine or polity. If the Manual clearly provided for delivery of the entire candidacy file to appellant, then enforcement of the contractual language arguably would turn on neutral principles of contract law and arguably not be barred by the rule of deference to ecclesiastical decisions. However, the FAC does not allege such unambiguous contract language. Instead, the FAC alleges, "The [Manual] stated that the file — the accumulation of documents over the entire course of the process — would be given to a ministerial candidate when the candidate received a 'Call' to ministry. The [Manual] did not directly address the disposition of file when the process ended by termination. However, when [appellant] entered the contract with [respondent], she was given the impression that however the process ended, [respondent] would give to [appellant] the entire file — including third party documents . . . . In addition to this, during the course of the process (10 years) members of [respondent's] organization repeatedly verbalized to [appellant] that the file would be given to her at process end." Thus, at best appellant alleges the contract was ambiguous as to whether the file would be provided to her if her candidacy were terminated.[3]

---

[3]   In her reply brief on appeal, appellant asserts she "may have made a mistake" when she alleged in the FAC that the Manual did not address the disposition of her candidacy file where the process was ended by termination. However, appellant does not claim she

" 'If a contract is capable of two constructions courts are bound to give such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect . . . .' [Citations.]" (*Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, 953-954; see also Civ. Code, § 1643.)  Moreover, in determining the meaning actually intended by the parties' language, courts are obligated to take "into account ' "all the facts, circumstances and conditions surrounding the execution of the contract." ' [Citation.]" (*Falkowski v. Imation Corp.* (2005) 132 Cal.App.4th 499, 509.)  In the present case, resolving the ambiguity in the alleged contract would require the courts to consider, in addition to appellant's evidence of oral representations made by respondent's representatives, the role of the candidacy file in respondent's process for the evaluation and selection of ministers, as well as any evidence of respondent's policies and practices surrounding disposition of candidacy files at the end of the candidacy process.  Determining which construction of the contract is most reasonable and feasible would require the courts to become embroiled in matters of church polity relating to the consideration of candidates for ministry and the handling of confidential or sensitive information received during the candidacy process.  Thus, it is not possible for the courts to resolve the contract dispute alleged in the FAC without becoming entangled in matters of church polity.

Moreover, any construction of the Manual that permitted the disclosure of confidential materials in appellant's candidacy file would be contrary to an October 2003 decision of the Permanent Judicial Commission of the General Assembly of the Presbyterian Church, which concluded, in a different matter, that respondent was not required to provide a candidate confidential documents relating to termination of the candidate.[4]  Thus, the relief requested in the FAC is contrary to the rule that the courts

---

can amend her complaint to allege the Manual unambiguously promised she would receive her entire candidacy file in the event of termination.

[4]   We grant appellant's July 27, 2012 request for judicial notice of the October 2003 ecclesiastical decision.  We deny as unnecessary appellant's January 11, 2013 request for judicial notice of the trial court's order on respondent's demurrer and certain arguments

"must defer to the resolution of" matters of ecclesiastical polity and administration "by the 'authoritative ecclesiastical body.' [Citation.]" (*Concord Christian*, *supra*, 132 Cal.App.4th at p. 1411.)

The trial court did not err in concluding that the ecclesiastical deference rule required it to sustain respondent's demurrer to the FAC.[5]

IV. *The Trial Court Did Not Err in Sustaining the Demurrer Without Leave to Amend*

Appellant contends the trial court erred in sustaining the demurrer without leave to amend. She has not shown the trial court abused its discretion.

"Generally it is an abuse of discretion to sustain a demurrer without leave to amend if there is any reasonable possibility that the defect can be cured by amendment. [Citation.] . . . However, the burden is on the plaintiff to demonstrate that the trial court abused its discretion. [Citations.] [The p]laintiff must show in what manner [she] can amend [her] complaint and how that amendment will change the legal effect of [her] pleading. [Citation.]." (*Cooper v. Leslie Salt Co.* (1969) 70 Cal.2d 627, 636 (*Cooper*); see also *Westamerica Bank v. City of Berkeley* (2011) 201 Cal.App.4th 598, 613-614 (*Westamerica*).)

In the present case, appellant has not identified any amendments to her complaint she could make that would allow the trial court to adjudicate her contract claim without running afoul of the ecclesiastical deference rule. Appellant also requests leave to amend her complaint to add a claim of a civil rights violation and new causes of action asserting one or more torts. However, she has not identified the civil rights violation or the tort causes of action she seeks to allege and has not indicated what allegations could state a claim for relief without running afoul of the ecclesiastical deference rule. (See *Cooper*, *supra*, 70 Cal.2d at pp. 636-637 ["Here [Cooper] has never advanced, either in the trial court or before us, any effective allegation which he could now make if further

---

made by respondent below. Those matters are already part of the record before this court.

[5] We need not and do not consider respondent's argument that appellant's contract claim is also barred by the statute of limitations.

amendment to the complaint were to be permitted. Although he insinuates multiple wrongs by respondents, he never points out in what manner those insinuations could be combined to state a cause of action. [Citation.]"]; *Westamerica*, *supra*, 201 Cal.App.4th at pp. 613-614 ["[The plaintiff] bears the burden of demonstrating that the trial court's ruling—sustaining the demurrer without leave to amend—was an abuse of discretion. [Citation.] If the plaintiff does not proffer a proposed amendment, and does not advance on appeal any proposed allegations that will cure the defect or otherwise state a claim, the burden of proof has not been satisfied. [Citations.]"].)

The trial court did not err in sustaining respondent's demurrer to the FAC without leave to amend.

DISPOSITION

The trial court's judgment is affirmed. In the interest of justice each side shall bear its own costs on appeal.

_____

SIMONS, Acting P.J.

We concur.

_____

NEEDHAM, J.

_____

BRUINIERS, J.

8