Filed 1/5/22  G.A. v. Flores CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| G.A., a Minor, etc., et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> PAOLO FLORES, <br><br> Defendant and Appellant. | D078031 <br><br><br> (Super. Ct. No. 20FDV00899S) |

APPEAL from an order of the Superior Court of San Diego County, James T. Atkins, Commissioner.  Affirmed.

Law Offices of Margarita Salazar and Margarita Salazar for Defendant and Appellant.

Patrick L. McCrary for Plaintiffs and Respondents.

Paolo Flores appeals from a domestic violence Restraining Order After Hearing (DVRO) in an action against him brought by G.A., a minor (Minor), by and through his guardian ad litem, Felix Aguirre, (who is Minor's father), under the Domestic Violence Protection Act (DVPA), Family Code section

6200 et seq.[1]  Flores raises five issues on appeal.  As we explain, because Flores has not met his burden of establishing reversible error as to any, we affirm the DVRO.

## I.     FACTUAL AND PROCEDURAL BACKGROUND[2]

In March 2020, Aguirre, in his capacity as the guardian ad litem for Minor, filed a DVPA request for a domestic violence restraining order against Flores, who was married to Minor's mother (Mother).  At the time of the hearing on the request, Minor was 12 years old and his younger brother (Brother) was nine years old.  In part, the request contained evidence of the following alleged abuse:  On February 24, 2020, "Flores picked up [Minor] by his face and threw him on the couch"; and on various other occasions, Flores told Minor and Brother that " 'Your father [Aguirre] abused your mother [Mother]' " and " 'Your father [Aguirre] is a coward.' "

On the day the action was filed, the trial court issued a temporary restraining order, granting both personal conduct orders and a stay-away order in favor of Minor and against Flores.[3]  The court also set, and later continued, a date for a hearing on Minor's request.

---

[1]     Further undesignated statutory references are to the Family Code.

[2]     Consistent with appellate procedure and the standard of review to be applied here (see text at pt. II., *post*), we state the evidence in a light most favorable to the DVRO.  (*Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, 1142 (*Burquet*) [appeal from grant of DVPA restraining order].)

[3]     While not clear from the record or the parties' appellate briefing, we understand that the court issued this temporary restraining order on an ex parte basis.

In response to the request, Flores filed a written response. It included declarations from himself, Mother, and Flores's mother and four exhibits.[4] Flores testified that the allegations in Minor's request "are completely false and misleading" and that "[n]o corporal punishment was used at anytime [*sic*], solely verbal corrections and discipline." In part, Flores testified that, in response to Minor's disrespectful behavior to Mother and Flores, Flores asked Minor to get up from where he was sitting and led him to a couch where they could talk; however, because Minor "refused to look at [Flores] and . . . stared away in a disrespectful way," Flores "put [his] finger on [Minor's] chin to turn his face toward [Flores]." Flores emphasized that he was neither "hostile" nor "aggressive" and "[t]here was no physical harm against [Minor]."

Mother, who testified that she was present at the time of the incident, confirmed Flores's account of the events. In particular, she testified that "[n]o corporal punishment was used at anytime [*sic*]" and that Minor did not suffer any "physical harm"; instead, due to Minor's "disrespecting" Mother, Flores "guided" Minor to the next room; and, when Minor would not look at Flores, Flores "guided [Minor's] face to look directly at him."

Flores's mother testified that Flores had to ask Minor three times to "stand up," and when he did Flores "proceeded to guide [Minor] to the living room area where he discussed his behavior [*sic*]." Flores's mother concluded by stating that Flores did not "yell, scream, hit, injure, shake, spank, tug, throw, or any form of physical/verbal violence towards [Minor]." (*Sic*.)

In reply, Aguirre filed a document entitled "Declaration," which contained a statement from Aguirre, Aguirre's signature, and unsworn

---

[4] The record on appeal contains only Flores's "Notice of Intent to Lodge Documents," not copies of the exhibits themselves.

statements from Minor's (and Brother's) maternal aunt and maternal grandfather. Because Aguirre did not serve Flores with these submissions[5] and because the trial court did not rely on them in issuing its ruling, we will not identify their contents other than to note they describe Flores in an unflattering light.

The court conducted the hearing telephonically pursuant to California Rules of Court, appendix I, emergency rule 3(a).[6] After receiving testimony from Aguirre, Flores, and Minor and argument from Aguirre and Flores, the court ruled from the bench.

Aguirre began his testimony by stating that both children (Minor and Brother) are so "afraid of [Flores] and [Mother]" that "they don't want to go back." Consistent with his declaration included as part of Minor's initial request, Aguirre testified that Minor told him that Flores "picked up [Minor]

---

[5] Aguirre disclosed the failure to serve this evidence during the parties' introductions at the commencement of the hearing. Flores did not object.

[6] In March 2020, due to the impact of the COVID-19 pandemic, the Governor issued Executive Order N-38-20, which suspended any provision of law that " 'limited the Judicial Council's ability to issue emergency orders or rules, and suspended statutes that may be inconsistent with rules the Judicial Council may adopt.' " (*E.P. v. Superior Court* (2020) 59 Cal.App.5th 52, 55.) Pursuant to that authority, in April 2020, the Judicial Council adopted 11 emergency rules. (*Ibid*.) As applicable here, emergency rule 3(a) pertains to the use of technology for remote court appearances and provides in part: "Notwithstanding any other law, in order to protect the health and safety of the public, . . . courts must conduct judicial proceedings and court operations as follows: [¶] (1) Courts may require that judicial proceedings and court operations be conducted remotely. [¶] (3) Conducting proceedings remotely includes, but is not limited to, the use of video, audio, and telephonic means for remote appearances; . . . and the use of remote reporting and electronic recording to make the official record of an action or proceeding." (Emergency rule 3(a).)

4

by his face . . . and pinned him [to] the couch." Aguirre further testified that Flores told both children "that [Minor] is a liar and that he will go to Juvenile Hall . . . for lying." Finally, in response to questioning from the court, Aguirre explained that custody orders for the two children were in place— "[i]t was 50/50" at the time of the incident—in a pending family law case.

The court expressly asked Aguirre to call Minor to the telephone. After introductions, the judge asked Minor questions that elicited the following: Minor was 12 years old, he had never spoken in court before, and he was able—and promised—to tell the truth in response to the judge's questions. Minor then testified in response to questions from the court: Flores "grabbed me by my face" and "started talking about how my dad [Aguirre] did stuff to other people that wasn't true." When the court asked whether Flores had hurt him, Minor explained that, although he was not hurt "physically," Flores's actions "hurt a lot mentally." Minor confirmed that Flores had grabbed him by the face—"right on my cheeks where my chin was," with "[h]is palm on my chin," in a "rough" manner—and started talking bad about Aguirre. Flores "looked mad" and had his face within six inches of Minor's face. Minor acknowledged that, at the time Flores grabbed his face, Minor "was in a mood" because Mother had told him that he could not use his iPad to call his father (Aguirre). In conclusion, Minor testified that he did not want to go Mother's house if Flores was there, because Flores "scared" him— not because he was mad at or did not like Flores.

Consistent with his prehearing submission, Flores denied holding Minor's face while he talked to Minor; Flores explained that, because of "behavioral issues," he "gently guid[ed]" Minor's face to look at him, because Minor "refused to look at [him]." Flores again insisted that the incident did

5

not happen as Minor testified, arguing that Minor was "being coached by his father."

At the conclusion of the evidence and argument, the court granted the requested restraining order, explaining: "Based on [Minor's] testimony today, which I believe, I find good cause to issue the permanent restraining order." The court ruled that the order was for a three-year period, described the acts restrained, sua sponte added Brother as a protected party, and told Flores that he could obtain a copy of the written order (previously identified as the DVRO) at the courthouse information desk.

Flores timely appealed from the DVRO.

## II.   DISCUSSION[7]

We begin with the understanding that "it is a fundamental principle of appellate procedure that a trial court judgment [or appealable order] is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609 (*Jameson*); accord, *Ashby v. Ashby* (2021) 68 Cal.App.5th 491, 509 [appeal from order denying relief in a DVPA action].)

---

[7]   Flores and Aguirre each represented himself in the trial court. The procedural rules apply the same to self-represented parties as to parties represented by counsel. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985; *Martinez v. Vaziri* (2016) 246 Cal.App.4th 373, 383 [family court parentage action: "party appearing in propria persona 'is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys' "].) The fact that a party is representing himself is not a basis for special treatment that would be unfair to the other litigant(s) or to the trial court. (*Rappleyea,* at pp. 984-985; *McClain v. Kissler* (2019) 39 Cal.App.5th 399, 416; see Advisory Com. com., Cal. Code Jud. Ethics, canon 3B(8).)

6

We continue with the understanding that we review an order granting a domestic violence restraining order for an abuse of discretion. (*In re Marriage of Fregoso & Hernandez* (2016) 5 Cal.App.5th 698, 702 [appeal from the grant of a DVPA restraining order]; *Burquet, supra,* 223 Cal.App.4th at p. 1143 [same].) In this context:

> " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' " [Citation.] We accept as true all evidence tending to establish the correctness of the trial court's findings, resolving every conflict in the evidence in favor of the judgment." (*Fregoso & Hernandez,* at p. 702, quoting *Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 419, fn. 2 [appeal from the grant of a DVPA restraining order].)

Since an exercise of discretion must be guided by applicable legal principles, however, we review de novo whether the trial court applied the correct legal standard in exercising its discretion. (*Rodriguez v. Menjivar* (2015) 243 Cal.App.4th 816, 820-821 [appeal from order denying DVPA restraining order].)

Finally, we proceed with the further understanding that, to obtain a reversal, *in addition to error*, the appellant must also establish prejudice (Code Civ. Proc., § 475) that resulted in a " 'miscarriage of justice' " (Cal. Const., art. VI, § 13) as a result of the error. (*Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069 (*Pool*).) A " 'miscarriage of justice' " may be found on appeal " ' "only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." ' " (*Ibid.*; accord, Code Civ. Proc., § 475.) In this context, "reasonably probable" means "more than an abstract possibility."

7

(*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715, italics omitted.)

In the present appeal, Flores raises five independent issues. As we explain, under the foregoing standards, Flores did not meet his burden of establishing reversible error.

A.    *Failure to Make Specific Findings*

Flores first argues that the trial court abused its discretion in issuing the DVRO without making any findings.

Flores does not present, and our independent research has not disclosed, any legal authority to support his suggestion that the court was required to make factual findings. Section 6304 describes the court's responsibility when issuing a domestic violence restraining order, and there is no mention of, let alone a requirement for, making factual findings.[8] Given that, in other sections of the DVPA, the Legislature expressly required findings in court orders related to other types of restraining orders,[9] we

_____

[8]    Section 6304 provides: "When making [an order like the DVRO here], where both parties are present in court, the court shall inform both the petitioner and the respondent of the terms of the order, including notice that the respondent is prohibited from owning, possessing, purchasing, or receiving or attempting to own, possess, purchase, or receive a firearm or ammunition, and including notice of the penalty for violation. Information provided shall include how any firearms or ammunition still in the restrained party's possession are to be relinquished, according to local procedures, and the process for submitting a receipt to the court showing proof of relinquishment." The court complied with these requirements.

[9]    For example, and without limitation, section 6305, subdivision (a)(2) precludes the trial court from issuing a mutual restraining order unless, among other requirements, "[t]he court makes detailed findings of fact indicating that both parties acted as a primary aggressor and that neither party acted primarily in self-defense." Similarly, section 6320.5, subdivision (a) requires the trial court to provide "the reasons for denying" an ex parte

easily conclude that the Legislature knew how to require such findings if that was its intent. On this basis, will not infer any such requirement here.

Even if there were a requirement for such findings, however, Flores has not made any showing of prejudice. He argues only that, without findings, "a restrained party is not given notice as to what specific acts constitute 'harmful conduct' or conduct sufficient to satisfy the requirements of and warrant the issuance of a restraining order." We disagree. Here, Flores knows (or should be able to determine) what specific acts satisfied the requirements for the issuance of the DVRO: Flores received notice of the allegations when he was served with Minor's request; Flores filed pleadings and evidence in opposition to the request; Flores attended a hearing at which evidence was presented and a court ruling issued; and in this appeal, Flores has had the opportunity to challenge the sufficiency of the allegations or evidence, as well as the court's ruling, to the extent he believes that Minor is not entitled to the relief granted. Flores's showing, therefore, does not suggest, let alone establish, that " ' "it is reasonably probable that a result more favorable to [him] would have been reached" ' " had the trial court made factual findings. (See *Pool*, *supra*, 42 Cal.3d at p. 1069.)

For the foregoing reasons, Flores did not meet his burden of establishing that the trial court abused its discretion in failing to make factual findings.

B.      *"Coaching" Minor's Testimony*

Flores next argues that, as "[t]he court began to inquire of [Minor], . . . it became clear to [Flores] that [Aguirre] was 'coaching' the child during his

---

petition (to "enjoin[ ] a party from molesting, attacking, . . .") pursuant to section 6320.

testimony."[10]  Because the hearing was telephonic, Flores's argument continues, the court could not observe whether Aguirre was "coaching" Minor, and "the Court did nothing to limit any undue influence by [Aguirre], including to simply inquire from [Minor] if [Aguirre] was telling him what to say."  According to Flores, the court's failure to determine whether Minor had been "coached" is an abuse of discretion.

At the hearing, Flores did not interpose an objection (or move to strike) Minor's testimony based on what he argued to the trial court was his "belie[f]" that Minor "is being coached" by Aguirre.  By raising an evidentiary objection for the first time on appeal, Flores forfeited appellate review of the issue.  (Evid. Code, § 353, subd. (a);[11] *People v. Delgado* (2017) 2 Cal.5th 544, 580 [appellant forfeited claim of erroneous admission of evidence by failing to object to that evidence below]; *Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 726 [same].)

Flores tells us that he did object at the hearing, but that the court ignored the objection and failed to ask Minor:  where Aguirre was during this testimony; whether Aguirre "coached him to testify in a particular manner"; or if Minor "felt pressured by [Aguirre] to testify against [Flores]."  Flores does not provide a record reference for the objection he describes on appeal.

---

[10]    Contrary to Flores's statement regarding timing, the record on appeal establishes that Flores first mentioned his concern that Aguirre had been "coaching" Minor as an argument Flores presented well after the conclusion of Minor's examination.

[11]    Evidence Code section 353, subdivision (a) provides that an appealable order like the DVRO here "shall not be set aside" by reason of the erroneous admission of evidence unless "[t]here appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion."

Based on our independent review of the record, we disagree with Flores's suggestion that he interposed any objection either to Minor's testimony or to the scope of the court's questioning. In this regard, we note the following exchange at the conclusion of Flores's presentation, which occurred *after* the conclusion of the court's examination of Minor (see fn. 10, *ante*) and immediately before the court ruled:

> "THE COURT: Well, did you grab [Minor]—Did you take [Minor] by the arm, take him off the chair? Did you put him on the couch, and did you have your hand on his face while you were talking to him?
>
> "[FLORES]: None of that happened. What he is describing as my hand on his face is gently guiding his face to look at me because he refused to look at me. Every allegation that he is clearly stating–I don't know how that transpired. *I believe he is being coached by* [*Aguirre*]. I—I didn't physically hurt the child, as he stated." (Italics added.)

This *belief* by Flores is not an objection, but rather an argument which, at most, went to weight of Minor's testimony. Contrary to Flores's presentation on appeal, there was no objection or motion to strike and, thus, no need for a ruling (or further questioning) by the court. Stated in terms of our standard of review, since there was no exercise of the court's discretion related to Flores's "belie[f]," there could be no abuse of discretion.

Moreover, to the extent Flores believed that certain questions could have elicited evidence as to whether Aguirre had "coached" Minor, Flores could have questioned Aguirre or Minor— or, at a minimum, Flores could have asked the court to present to Aguirre or Minor the questions Flores suggests in his appellate brief.

Once again, however, even if the court had been presented with and overruled a timely objection, Flores has not made any showing on appeal that " ' "it is reasonably probable that a result more favorable to [him] would have

been reached" ' " had the trial court sustained such an objection. (See *Pool*, *supra*, 42 Cal.3d at p. 1069.)

For the foregoing reasons, Flores did not meet his burden of establishing that the trial court abused its discretion in failing to inquire whether Aguirre had "coached" Minor.

C. *Minor's Evidence not Served on Flores*

There is no question but that, in June 2020, Aguirre filed—*but did not serve on Flores*—a 14-page document entitled, "Declaration," which is dated and signed by Aguirre under penalty of perjury and which contains statements from him and what appear to be email communications (each entitled "Declaration") from Minor's maternal aunt and Minor's maternal grandfather. There is also no question but that, prior to the hearing, the court had reviewed Aguirre's June 2020 filing. Flores contends that the court's consideration of a filed document that was not served on him was an abuse of discretion.

We do not approve of Aguirre's ex parte communications with the court. Under the circumstances, the court should have either continued the hearing and ordered Aguirre to serve Flores with the June 2020 document, or the court should have expressly stated that it was not considering the contents of the document in deciding the dispute. We will assume without deciding that the court erred in proceeding as it did under the circumstances.

However, even under this assumption, by not suggesting how " ' "it is reasonably probable that a result more favorable to [him] would have been reached" ' " had the trial court sustained such an objection (see *Pool*, *supra*, 42 Cal.3d at p. 1069), Flores cannot establish reversible error. Although Flores tells us that "the court relied on" Aguirre's June 2020 unserved document in reaching its decision, he provides no record reference for this

12

statement; and, in fact, the record affirmatively establishes otherwise. Here, the court expressly stated that the basis of its decision to issue the requested relief was "[*Minor's*] *testimony today*," which the court found "believ[able]." (Italics added.)

For the foregoing reasons, Flores did not meet his burden of establishing that the trial court abused its discretion in failing to sua sponte strike the document that Aguirre filed in June 2020 but failed to serve Flores.

D.      *Aguirre as Guardian Ad Litem*

In a point heading in his brief, Flores asserts that the court abused its discretion "by allowing [Aguirre] to serve as [Minor's] guardian ad litem when a conflict of interest exists." (Capitalization and bolding omitted.) However, Flores presents only two and a half sentences in support of this statement— with no legal authority or analysis.[12]

Absent the benefit of a legal argument with the citation of applicable authorities, we have nothing to consider as to this issue—either as to the merits or as to any prejudice Flores may have suffered. Accordingly, Flores forfeited appellate review of the issue. (*Phillips v. Campbell* (2016) 2 Cal.App.5th 844, 853 (*Phillips*) [appeal from order granting DVPA restraining order: " 'Under well-established principles of appellate review, '[t]o demonstrate error, appellant must present meaningful legal analysis supported by citations to authority' ' "; Cal. Rules of Court, rule

---

[12]      The entirety of Flores's presentation provides as follows: "The Court inquired of [Aguirre] if there was an active custody and visitation orders concerning [Minor] and [Aguirre] confirmed that YES there was. [RT @ 8-11.] While the restraining order was not against [Minor], the Court also took evidence confirming that [Flores] is [Minor's] stepfather by marriage to his mother. [CT @ 0035]. However, under Family Code [end of argument]." (Bracketed record references in original.)

13

8.204(a)(1)(B) [each point in a brief must be supported "by argument and, if possible, by citation of authority"].)

Even if Flores had provided argument and authority, however, he could not have met his burden of establishing reversible error, because he failed to include in the record on appeal the pleading(s) and order which resulted in Aguirre's appointment as Minor's guardian ad litem. (*Jameson, supra*, 5 Cal.5th at p. 609 [" ' "if the record is inadequate for meaningful review, the appellant defaults" ' " and cannot establish error].)

For the foregoing reasons, Flores did not meet his burden of establishing that the trial court abused its discretion in allowing Aguirre to serve as Minor's guardian ad litem.

E.  *Section 3044 Presumption in DVPA Proceedings*

In closing, Flores argues that, because the effect of the DVRO is to restrain Flores from being in his home during the time Mother has physical custody of the children (Minor and Brother), the court abused its discretion. More specifically, the evidence at the hearing established that Minor and Flores were married, and Aguirre and Mother had a 50-50 timeshare with the children; yet the DVRO restrained Flores from being within 100 yards of the children. On appeal, Flores suggests that this arrangement violates section 3044.

Initially, because Flores failed to raise this issue in the trial court, we will not consider it on appeal. That is because, " ' "[a]s a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal; appealing parties must adhere to the theory (or theories) on which their cases were tried. This rule is based on fairness—it would be unfair, both to the trial court and the opposing litigants, to permit a change of theory on appeal." ' " (*Green v. Healthcare Services, Inc.* (2021) 68 Cal.App.5th 407,

14

418-419; accord, *Phillips, supra*, 2 Cal.App.5th at p. 853 [appeal from order granting DVPA restraining order].)  " 'Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider. . . .  Bait and switch on appeal not only subjects the parties to avoidable expense, but also wreaks havoc on a judicial system too burdened to retry cases on theories that could have been raised earlier.' "  (*Green*, at p. 419.)

For this reason, Flores did not meet his burden of establishing that the trial court abused its discretion in failing to apply the legal presumption related to child custody contained in section 3044, subdivision (a).

In any event, even if we were to consider the issue, the result would be no different.  Flores contends that, because the trial court did not allow him to testify as to "prior abuse by [Aguirre] against [Minor or Brother] or [Mother],"[13] the court precluded the consideration of the legal presumption in section 3044 prior to issuing the DVRO.

Section 3044, subdivision (a) provides in part:

> "Upon a finding by the court that a *party seeking custody of a child* has perpetrated domestic violence within the previous five years against the other party seeking custody of the child, or against the child or the child's siblings, . . . there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child, pursuant to Sections 3011 and

---

[13]     In response to Flores's testimony that Aguirre was "arrested for domestic violence," the court asked Flores to "stick to what [Minor] just got done saying about you and not all of the family business about [Aguirre] over there."  At no time did Flores suggest that he was presenting this evidence for purposes of applying the presumption in section 3044, subdivision (a).

3020.[14]  This presumption may only be rebutted by a preponderance of the evidence."  (Italics added.)

Thus, by its very terms, the presumption in section 3044, subdivision (a) is limited to custody proceedings; and in the present case, which was filed on behalf of *Minor* under the DVPA, is not one that involves child custody.[15]

Finally, had we considered Flores's argument, it would have failed for the additional reason that Flores did not attempt to establish that " ' "it is reasonably probable that a result more favorable to [him] would have been reached" ' " had the trial court entertained evidence regarding Aguirre's alleged domestic violence and an application of section 3044.  (See *Pool*, *supra*, 42 Cal.3d at p. 1069.)

---

14    Sections 3011 and 3020 are contained within division 8 of the Family Code applicable to child custody.  Section 3020 sets forth legislative findings and declarations, including but not limited to a child's "right to be safe and free from abuse, and that the perpetration of child abuse or domestic violence in a household where a child resides is detrimental to the health, safety, and welfare of the child" for purposes of "ensur[ing] that the health, safety, and welfare of children shall be the court's primary concern in determining the best interests of children when making any orders regarding the physical or legal custody or visitation of children."  Section 3011 requires that, in making a determination of the "best interests of the child" *in specified proceedings under section 3021* and consistent with section 3020, the court must consider any "history of abuse" by the party seeking custody against specified individuals.  Significantly, the specified proceedings to which section 3011 applies in section 3021 do not include requests for domestic violence restraining orders.

15    Minor's form Request for Domestic Violence Restraining Order, Judicial Council form No. DV-100, and Flores's form Response to Request for Domestic Restraining Order, Judicial Council form No. DV-120, each contain a section entitled "Child Custody and Visitation" (bolding omitted).  Both Minor and Flores left these sections blank.  Consistently, none of the written or oral evidence or argument presented raises an issue as to the need for a ruling as to child custody.

16

## III. DISPOSITION

The DVRO is affirmed.  Aguirre is entitled to his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)

IRION, J.

WE CONCUR:


HUFFMAN, Acting P. J.


O'ROURKE, J.