Filed 2/28/23; Certified for Publication 3/27/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LAKE LINDERO HOMEOWNERS ASSOCIATION, INC., et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> CHRISTOPHER T. BARONE, <br><br> Defendant and Appellant. | B306164 <br><br> Los Angeles County Super. Ct. No. 20VECP00041 |

APPEAL from an order of the Superior Court of Los Angeles County, Shirley K. Watkins, Judge. Affirmed.

Christopher T. Barone, in pro. per., for Defendant and Appellant.

Kulik Gottesman Siegel & Ware, Thomas M. Ware II and Justin Nash for Plaintiffs and Respondents.

————————————

Defendant Christopher T. Barone appeals an order under Corporations Code section 7616 confirming the validity of an election removing the former board of the Lake Lindero Homeowners Association, Inc. (the Association) and electing a new board of directors.[1] Barone makes two principal contentions: (1) the election was not valid because it contravened the Association's bylaws and statutory provision governing board recall elections, and (2) section 7616 did not authorize plaintiffs'

---

[1] Statutory references are to the Corporations Code, unless otherwise designated.

Barone noticed an appeal from a "Judgment after court trial" entered on May 4, 2020. The record, including the register of actions, does not reflect the entry of a judgment on May 4, 2020 or any other date. Rather, on May 4, 2020, the trial court entered an order and final statement of decision confirming the validity of the board election under section 7616. Although that order disposed of only one of plaintiffs' two causes of action, plaintiffs subsequently dismissed their remaining claim on May 22, 2020. Because the court's May 4, 2020 order and plaintiffs' voluntary dismissal collectively have "all the earmarks of a final judgment," Barone properly took this appeal on May 28, 2020. (*Estate of Miramontes-Najera* (2004) 118 Cal.App.4th 750, 755; *Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 304 [a judgment is final " ' "when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined" ' "]; *PV Little Italy, LLC v. MetroWork Condominium Assn.* (2012) 210 Cal.App.4th 132, 144 (*PV Little Italy*) [order invalidating corporate election under § 7616 appealable where "order appealed from accomplished that goal, and neither party has indicated that anything more of substance remains to be done in the litigation, except entry of judgment"].)

action or the trial court's order validating the recall election.[2] We reject both contentions and affirm.

---

[2] Barone commits several pages of his opening brief to challenging the trial court's credibility determinations. It is settled that " '[c]onflicts and even testimony [that] is subject to justifiable suspicion *do not justify the reversal of a judgment*, for it is the *exclusive* province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' " (*People v. Penunuri* (2018) 5 Cal.5th 126, 142, italics added, quoting *People v. Zamudio* (2008) 43 Cal.4th 327, 357.) We thus disregard all contentions challenging the trial court's credibility determinations as insufficient to support reversal of the order.

Barone makes other contentions that do not warrant meaningful discussion. These include that the trial court refused to consider an earlier ruling in an unrelated case involving an Association recall election; that the board election violated procedures pertaining to the election of public officials under the Elections Code; that the court refused to admit 500 pages of exhibits submitted after the pretrial deadline and after plaintiffs rested their case; that the court refused to compel testimony from the Association's attorney after Barone failed to make an offer of proof; that the Association's attorney violated the Rules of Professional Conduct by his presence at the election; that the court disregarded conflicting evidence about which parties sent and received election materials; and that several procedural violations (such as the failure to sign a case management form) occurred during pretrial proceedings. Among other shortcomings, Barone fails to support these scattershot claims with a reasoned argument or citation to relevant legal authorities, and he categorically fails to address, let alone satisfy, his burden to demonstrate a miscarriage of justice occurred. (See *Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069 [An appellant "must also show that the error was prejudicial [citation] and resulted in a 'miscarriage of justice' "—i.e., that

## FACTS AND PROCEDURAL HISTORY

Consistent with our standard of review for factual questions, we state the evidence in the light most favorable to the trial court's factual findings, indulging all reasonable inference in support of the court's order.[3] (*Ryland Mews Homeowners Assn. v. Munoz* (2015) 234 Cal.App.4th 705, 712.)

### 1. *The Recall and Full Board Election*

The Association is a California non-profit corporation charged with operating the Lake Lindero development—a 459-lot common interest development and golf community located in

---

" ' "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." ' "].) Because the opening brief fails to fulfill these fundamental requirements of appellate process, we deem all these contentions waived. (*People v. Stanley* (1995) 10 Cal.4th 764, 793 [" '[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.' "].)

We likewise deem forfeited arguments Barone makes for the first time in his reply brief, including his claim (without citation to the record) that the trial court purportedly interfered with a contract Barone had with his legal counsel. (*Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11 ["Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant."].)

[3]    Barone filed a motion to augment the record with documents that were not filed or lodged in the trial court. The motion is denied. (See *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 ["Augmentation does not function to supplement the record with materials not before the trial court."]; Cal. Rules of Court, rule 8.155(a)(1).)

4

Agoura Hills. The Association common areas include a golf course, driving range, tennis courts, pool, restaurant, pro shop, and a lake.

Membership in the Association is appurtenant to ownership of a lot within the development. The Association is governed by a five-member uncompensated board of directors. Since 2018, Lordon Management Company has provided professional management services to the Association.

Barone is a member of the Association and former member of its board of directors. In December 2018, he resigned his board position and accepted paid employment as the Association's chief executive officer (CEO).

On September 5, 2019, board member Michael Allan was served with a petition signed by more than five percent of the Association's members calling for a special meeting to recall the entire board of directors and elect a new board if the recall was successful. At the time, the other board members, including Allan, were Michael Umann, Dave DiNapoli, Paul Bromley, and Hal Siegel. Allan advised all the board members and Lordon Management of the petition. He hand-delivered the original petition to Lordon Management the next day.

The board did not fix a time for the special meeting or give notice of the meeting to the Association's members within 20 days of receiving the petition, as is required under section 7511, subdivision (c).[4] When the 20-day statutory period expired,

---

[4] Section 7511, subdivision (c) provides, "Upon request in writing to the corporation . . . by any person (other than the board) entitled to call a special meeting of members, the officer forthwith shall cause notice to be given to the members entitled to vote that a meeting will be held at a time fixed by the board

5

Allan, in his capacity as one of the petitioners, sent notice of the special meeting to the Association's 459 members.

The notice stated the purpose of the special meeting was to hold a vote on the removal of the entire board and, in the event of a recall, an election of the new board. Due to an error on the email address listed for candidacy submissions, Allan sent a new notice listing the date of the meeting as December 19, 2019.

Due to the full board's inaction, the petitioners also took it upon themselves to conduct the election.[5] As part of that process, Allan, on behalf of the petitioners, contracted with the League of Women Voters (LWV), a non-partisan entity with no stake in the outcome of the election, to retain an inspector of elections. Judy Murphy of the LWV was ultimately appointed Inspector of Elections for the December 2019 recall.

In its customary role as an inspector of elections, the LWV receives and tallies ballots, but does not mail out election materials. Accordingly, the petitioners prepared the election materials, stuffed the ballot envelopes, and mailed ballots out to the homeowners at the petitioners' individual expense.

not less than 35 nor more than 90 days after the receipt of the request. . . . If the notice is not given within 20 days after receipt of the request, the persons entitled to call the meeting may give the notice or the superior court of the proper county shall summarily order the giving of the notice, after notice to the corporation giving it an opportunity to be heard."

[5] Evidence elicited at trial showed Barone, ostensibly speaking for a majority of the board, had instructed Lordon Management, which normally would have assisted with an Association election, to "do nothing until legal counsel and/or the board advises differently."

6

The LWV conducted the election meeting on December 19, 2019.  Murphy, in her role as Inspector of Elections, announced a quorum was not present, as the LWV had not received in excess of 50 percent of the votes of the membership (the minimum participation required to constitute a quorum under the Association's bylaws).[6]  Following Murphy's announcement, a majority of the members present at the meeting voted to adjourn the meeting to December 23, 2019.[7]

At the December 23, 2019 meeting, Murphy determined the required quorum of 25 percent of the membership (115 of the 459 members) had been met.  (See fn. 7, *ante*.)  Of the 190 ballots received, Murphy counted 156 votes in favor of recalling the entire board.

Having determined the recall passed, the LWV proceeded to certify the election of the new board:  Allan; Harriet Cohen; Siegel; Umann; and Bromley.  Lordon Management mailed notice of the election results to the membership.

On December 31, 2019, the new board of directors eliminated Barone's CEO position.

---

[6]     As of December 19, 2019, the LWV had received a total of 182 sealed ballot envelopes of a possible 459 (39.6 percent).

[7]     As we will discuss, the Association's bylaws provide that if a quorum is not present, "the members present either in person or by proxy, may without notice other than announcement at the meeting, adjourn the meeting to a time not less than forty-eight (48) hours nor more than thirty (30) days from the time the original meeting was called, at which meeting twenty-five percent (25%) of the votes of the membership shall constitute a quorum."

## 2.    *The Complaint*

On January 21, 2020, plaintiffs (the Association, Allan, and Cohen) filed this action against Barone and current and former board members Umann, Bromley, and DiNapoli, asserting two causes of action for declaratory relief under section 7616 and common law nuisance.

The complaint alleged defendants had refused to "recognize the validity of the recall" and continued to assert that "the prior Board remains in power and that Defendant Barone remains the putative 'CEO' of the Association."  It further alleged defendants were "engaged in extensive efforts to hinder the new Board of Directors from conducting the affairs of the Association."

As relevant to this appeal, plaintiffs prayed for a declaration under section 7616 that the December 2019 election recalling the Association's board of directors was valid; that the Association's board of directors consists of Allan, Bromley, Cohen, Siegel, and Umann; and that "Barone is not the CEO of the Association and not its authorized agent."

## 3.    *The Statement of Decision*

On May 4, 2020, after an 11-day bench trial, the court filed a final statement of decision and order declaring, among other things:  The December 23, 2019 full board recall election was valid; Allan, Bromley, Cohen, Siegel, and Umann "are (and have been since [December 23, 2019])" the Association's directors; and the "former CEO Christopher Barone has no authority (and has had no authority since the date of his termination) to act on behalf of the [Association] . . . unless granted by the current board."

The court found:  The petitioners properly presented the petition for full board recall to the former board; the former board

8

unreasonably violated its duties under the Association's bylaws and governing statutory law to set a special meeting on the recall election after receipt of the petition; the petitioners properly conducted the recall election when the former board failed to do so; the LWV properly executed its duties as Inspector of Elections and did not prejudice or demonstrate bias against any interested party; and the election was conducted in accordance with the Association's bylaws and governing statutory law, including provisions prescribing a majority vote and quorum requirements. In making these findings, the court determined defense witnesses testifying to alleged bias or improprieties in the petition and voting process were "not credible."

As relevant to this appeal, the trial court determined, as a legal matter, that a provision in the Association's bylaws requiring a "vote of the majority of the votes held by the entire membership" to remove the entire board or an individual director was legally invalid and "*unenforceable*." The court concluded this provision conflicted with and was displaced by statutes specifying that, for a nonprofit mutual benefit corporation of 50 or more members (like the Association), only the majority of the votes represented and voting at a duly held meeting at which a quorum is present was needed to remove a director. (See §§ 7222, subd. (a)(2), 5034, 7151, subd. (e).)

On May 22, 2020, plaintiffs voluntarily dismissed their remaining cause of action for nuisance. On May 28, 2020, Barone filed this appeal.[8]

---

[8] The other defendants did not appeal and are not parties to this appeal.

9

## DISCUSSION

**1.** ***The Appeal Is Not Moot: Material Questions Remain Regarding the Construction of the Bylaws and Statutes Governing the Vote Required to Remove the Association's Board of Directors***

As a threshold matter, plaintiffs contend this appeal should be dismissed as moot because reversal of the challenged order will not grant Barone effective relief now that subsequent board elections have taken place since the trial court's order. We disagree.

Because the duty of every judicial tribunal is " ' " 'to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions . . . [,] [i]t necessarily follows that when . . . an event occurs which renders it impossible for [the] court, if it should decide the case in favor of [the appellant], to grant him any effectual relief whatever, the court will not proceed to a formal judgment . . . .' [Citations.]" [Citation.] The pivotal question in determining if a case is moot is therefore whether the court can grant the [appellant] any effectual relief. [Citations.] If events have made such relief impracticable, the controversy has become "overripe" and is therefore moot. [Citations.] [¶] . . . When events render a case moot, the court, whether trial or appellate, should generally dismiss it.' " (*Parkford Owners for a Better Community v. County of Placer* (2020) 54 Cal.App.5th 714, 722.)

Plaintiffs did not file a written motion to dismiss with supporting affidavits and evidence establishing subsequent elections have in fact occurred that render this appeal moot. (See, e.g., *American Alternative Energy Partners II v. Windridge, Inc.* (1996) 42 Cal.App.4th 551, 557 [respondent should "have

10

made a formal, written motion for dismissal of the appeal, which, because it would have been based on matters not appearing in the appellate record, would have required the submission of affidavits or other supporting evidence"].)[9]  Be that as it may, even if we assume there have been subsequent board elections since December 2019—as seems practically certain given the requirement for annual elections in the Association's bylaws— we still cannot consider this appeal moot.  The challenged order grants declaratory relief embracing a disputed judicial construction of the bylaws and statutes governing the vote required to remove a director from the Association's board.  Under these circumstances, "the general rule governing mootness becomes subject to the case-recognized qualification that an appeal will not be dismissed where, despite the happening of the subsequent event, there remain material questions for the court's determination." (*Eye Dog Foundation v. State Board of Guide Dogs* (1967) 67 Cal.2d 536, 541 (*Eye Dog Foundation*).)

---

[9]      Plaintiffs filed a request for judicial notice of a grant deed showing Uhlmann conveyed his interest in one lot in the development on July 30, 2020.  (Evid. Code, §§ 452, subd. (c), 459, subd. (a); see *Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 194.)  While we grant that request, we cannot accept, as plaintiffs assert, that the grant deed proves Uhlmann could not have maintained his position on the board after the conveyance.  Significantly, the Association's bylaws contemplate that a member may own multiple lots, such that a member is "entitled to one vote for *each* Lot in which they hold the interest required for membership." (Italics added.)  Because we have no evidence to establish how many lots Uhlmann owned when he conveyed the subject lot, the grant deed is insufficient to prove he is no longer a member of the Association entitled to serve on its board of directors.

11

*Eye Dog Foundation* is instructive. In that case, the plaintiff sought injunctive relief and a declaratory judgment to invalidate provisions of the Business and Professions Code covering "the subject 'Guide Dogs for the Blind,' " the enforcement of which had led to the suspension of the plaintiff's business license to train seeing eye dogs. (*Eye Dog Foundation, supra,* 67 Cal.2d at p. 540.) Several months after the trial court entered a judgment upholding all but one section of the challenged provisions, the regulatory state board formally reinstated the plaintiff's license after the plaintiff took action to comply with the challenged statutes. (*Id.* at pp. 540–541.) Recognizing that the pending appeal could no longer result in effective relief enjoining enforcement of the challenged statutes, our Supreme Court nonetheless held the appeal was not moot because the plaintiff "not only sought injunctive but declaratory relief, to wit, a declaratory judgment that the subject legislation is unconstitutional on its face and as applied to plaintiff's operation," such that there "remain[ed] material questions for the court's determination" on appeal. (*Id.* at p. 541.) As our high court explained, an exception to the general mootness doctrine "has been applied to actions for declaratory relief" in such circumstances "upon the ground that the court must do complete justice once jurisdiction has been assumed [citation], and the relief thus granted may encompass future and contingent legal rights." (*Ibid.*)

Even if we accept plaintiffs' contention that we can neither reinstate the former board, nor restore Barone to his CEO position, this does not render the appeal moot. Regardless of the board's current composition, Barone's appeal presents a material question for this court's determination encompassing

12

his future and contingent legal rights under the Association's bylaws and the statutes governing the recall of its board of directors. As in *Eye Dog Foundation*, our reversal of the trial court's declaratory relief order would grant Barone effective relief by embracing his construction of the relevant bylaws and statutory provisions, which remain enforceable against him and the rest of the Association's current membership for future recall elections. (*Eye Dog Foundation, supra,* 67 Cal.2d at p. 541, fn. 2 [" 'while it has been said that the declaratory judgment acts necessarily deal with the present rights, the "present right" contemplated is the right to have immediate judicial assurance that advantages will be enjoyed or liabilities escaped in the future' "].) This material question warrants disposition on the merits.

2. ***The Trial Court Correctly Determined the Former Board Was Validly Recalled Under the Association's Bylaws and Statutory Law***

Barone contends the trial court improperly disregarded a provision of the Association's bylaws requiring a majority vote of the "entire membership" to remove the board or an individual director from office. In the alternative, he argues the recall was not valid because the relevant special meeting did not achieve a quorum. We conclude the trial court correctly construed the bylaws and governing statutes.

Barone's contentions challenge the trial court's application of the bylaws and statutes to essentially undisputed facts. The contentions are therefore subject to our de novo review. (*Roybal v. Governing Bd. of Salinas City Elementary School Dist.* (2008) 159 Cal.App.4th 1143, 1148.) Likewise, insofar as the contentions concern the trial court's construction of the

13

Association's bylaws and our state's governing statutes, these issues too are subject to our de novo review.  (See *ibid.*; *PV Little Italy, supra,* 210 Cal.App.4th at pp. 144–145.)

It is undisputed that the recall election was approved by a vote of 156 in favor of recalling the entire board, with 190 ballots received out of 459 total membership votes.  Barone contends this was insufficient to approve the recall under Article VI, Section 3 of the Association's bylaws, which provides:  "The entire Board of Directors or any individual Director may be removed from office with or without cause at any time by *a vote of the majority of the votes held by the entire membership of record* at any regular or special meeting of members."  (Italics added.)  Because a majority of the 459 votes held by the entire membership of record is 230 votes, Barone contends the trial court erred in declaring the recall election valid.

The trial court rejected this contention based on a collection of interconnected statutes that effectively prohibit a nonprofit mutual benefit corporation with 50 or more members from requiring more than "a majority of the votes represented and voting at a duly held meeting at which a quorum is present" to remove a director from the corporation's board.  (§§ 5034, 7222, subd. (a)(2), 7151, subd. (e).)

Section 7222 expressly governs the recall of directors serving on the board of a nonprofit mutual benefit corporation.  The statute provides, in relevant part:  "[A]ny or all directors may be removed without cause if: [¶] (1) In a corporation with fewer than 50 members, the removal is approved by a majority of all members (Section 5033). [¶] (2) In a corporation with 50 or more members, the removal is approved by the members (Section 5034)."  (§ 7222, subd. (a).)  Under its plain terms, the

14

statute permits a corporation with *fewer than 50 members* to require the approval of "a majority of all members" (as specified in the Association's bylaws); however, for a corporation with 50 or more members (*like the Association*), the statute dictates that the removal need only be "approved by the members" as that phrase is defined in section 5034.

Section 5034 provides: " 'Approval by (or approval of) the members' means approved or ratified by the affirmative vote of *a majority of the votes represented and voting at a duly held meeting at which a quorum is present* (which affirmative votes also constitute a majority of the required quorum) or written ballot . . . or by the affirmative vote or written ballot of such *greater proportion*, including all of the votes of the memberships of any class, unit, or grouping of members *as may be provided in the bylaws* (subdivision (e) of Section 5151, *subdivision (e) of Section 7151*, or subdivision (e) of Section 9151) or in Part 2, Part 3, Part 4 or Part 5 for all or any specified member action." (Italics added.) The statute's reference to subdivision (e) of section 7151 is critical because, while section 5034 permits a nonprofit mutual benefit corporation to require a greater proportion of votes in its bylaws, section 7151, subdivision (e) expressly withdraws this authorization for a vote to remove a director from the corporation's board.

Section 7151, subdivision (e) provides: "The bylaws may require, for any or all corporate actions (*except as provided in paragraphs (1) and (2) of subdivision (a) of Section 7222 . . .*) the vote of a larger proportion of, or all of, the members or the members of any class, unit, or grouping of members or the vote of a larger proportion of, or all of, the directors, than is otherwise required by this part."

15

Because section 7151, subdivision (e) expressly prohibits a nonprofit mutual benefit corporation with 50 or more members (like the Association) from requiring a greater proportion of votes than is specified in section 7222, subdivision (a)(2) for the removal of a director, the trial court correctly concluded Article VI, Section 3 of the Association's bylaws could not be enforced to invalidate the recall election. And, because section 7222, subdivision (a)(2) requires only "approv[al] by the members" as defined in section 5034 to remove a director (§ 7222, subd. (a)(2)), the trial court correctly concluded the recall was valid if approved "by the affirmative vote of a majority of the votes represented and voting at a duly held meeting at which a quorum is present." (§ 5034.)

Notwithstanding the foregoing, Barone contends there were insufficient votes cast in the recall election to represent a quorum under the Association's bylaws. The relevant bylaws provision states:

> "The presence at any meeting, in person or by proxy, of members entitled to cast in excess of 50 percent (50%) of the votes of the membership, shall constitute a quorum for any action . . . . If, however, such quorum shall not be present or represented at any meeting, the members present either in person or by proxy, may without notice other than announcement at the meeting, adjourn the meeting to a time not less than forty-eight (48) hours nor more than thirty (30) days from the time the original meeting was called, at which meeting twenty-

16

five percent (25%) of the votes of the membership shall constitute a quorum."

The evidence at trial proved that, following the Inspector of Election's announcement that a quorum was not present at the December 19, 2019 meeting, a majority of the members present voted to adjourn the meeting to December 23, 2019 in accordance with the foregoing provision of the bylaws. The evidence further proved that, at the December 23, 2019 meeting, the Inspector of Elections had received 190 ballots, exceeding the required 25 percent of the votes of the membership (115 of the total 459 votes) needed to constitute a quorum at that meeting.

Barone does not dispute the foregoing facts. Rather, he argues the 25 percent quorum provision in the Association's bylaws "conflict[s]" with sections 7222 and 5034, which, he emphasizes, "contain[ ] no language about a 'reduced quorum.' " Contrary to Barone's premise, neither section 5034 nor section 7222 governs minimum quorum requirements for a nonprofit mutual benefit corporation. The relevant statute is section 7512.

Section 7512, subdivision (a) provides: "One-third of the voting power, represented in person or by proxy, shall constitute a quorum at a meeting of members, but, subject to subdivisions (b) and (c), *a bylaw may set a different quorum*." (Italics added.) Subdivision (b) stipulates that "[w]here a bylaw authorizes a corporation to conduct a meeting with a quorum of less than one-third of the voting power, then the only matters that may be voted upon . . . by less than one-third of the voting power are matters notice of the general nature of which was given."[10]

---

[10] Section 7512, subdivision (c) authorizes members to "continue to transact business until adjournment notwithstanding the withdrawal of enough members to leave

17

Consistent with section 7512, the Association's bylaws authorized a quorum of 25 percent of the voting power after an adjournment. (See § 7512, subd. (a).)[11] And, the record proves the matter voted upon at the meeting—the recall of the board and election of a new board in the event the recall was successful—was disclosed in the original meeting notice. (*Id.*, subd. (b)). The trial court correctly determined the December 2019 vote validly recalled the former board under the Association's bylaws and governing statutory law.

3. ***Section 7616 Authorized the Order Validating the December 2019 Recall Election***

Barone contends section 7616 authorizes a claim to validate an election only—"not a recall." He emphasizes there is "nothing" in the statute expressly addressing "a recall or removal of directors," and he argues it is a "decisive issue" that "there cannot be an election absent a successful recall" under the

---

less than a quorum, if any action taken (other than adjournment) is approved by at least a majority of the members required to constitute a quorum."

[11] The Association's bylaws also comply with regulations pertaining to quorum requirements promulgated by the Department of Real Estate for common interest developments like Lake Lindero. In particular, section 2792.17, subdivision (e)(2) of title 10 of the California Code of Regulations provides: "In the absence of a quorum at a members' meeting a majority of those present in person or by proxy may adjourn the meeting to another time, but may not transact any other business. . . . The quorum for an adjourned meeting may be set by the governing instruments at a percentage less than that prescribed for the regular meeting, but it *shall not be less than 25 percent of the total voting power* of the Association." (Italics added.)

18

Association's bylaws.  Additionally, Barone argues he is not a proper defendant under the statute.

Barone's arguments raise questions of statutory interpretation subject to our independent de novo review. (*Committee to Save the Beverly Highlands Homes Assn. v. Beverly Highlands Homes Assn.* (2001) 92 Cal.App.4th 1247, 1261.) "In the construction of statutes, the primary goal of the court is to ascertain and give effect to the intent of the Legislature. [Citations.]  The court looks first to the language of the statute; if clear and unambiguous, the court will give effect to its plain meaning." (*Id.* at p. 1265.)  "The words used should be given their usual, ordinary meanings and, if possible, each word and phrase should be given significance.  [Citations.]  The words used 'must be construed in context, and statutes must be harmonized, both internally and with each other, to the extent possible.' " (*Ibid.*)

Contrary to Barone's narrow reading of section 7616, we find the statutory text evidences a clear legislative intent to confer broad authority on the trial court in determining the validity of a board election.  Under section 7616, subdivision (a), "[u]pon the filing of an action therefor by any director or member or by any person who had the right to vote in the election at issue, the superior court of the proper county shall determine the validity of any election or appointment of any director of any corporation."  Critically, while this directive does not expressly refer to a recall election (as Barone emphasizes), subdivision (d) of the statute authorizes "[t]he court, consistent with the provisions of [the statutes governing nonprofit mutual benefit corporations] and in conformity with the articles and bylaws to the extent feasible, [to] determine the person entitled to

19

the office of director . . . and [to] direct *such other relief as may be just and proper.*" (§ 7616, subd. (d), italics added.)

In *Kaplan v. Fairway Oaks Homeowners Assn.* (2002) 98 Cal.App.4th 715 (*Kaplan*), the reviewing court considered whether an action under section 7616 properly encompassed the plaintiffs' claim that the challenged election violated their right to vote by proxy, such that the plaintiffs were entitled to prevailing party attorney fees under former Civil Code section 1354 for enforcing the association's bylaws.[12] (*Kaplan*, at pp. 717–718.) The *Kaplan* court acknowledged that section 7616 "does not create any substantive rights . . . to vote by proxy," but recognized the statute was nonetheless broad enough to provide a "procedural vehicle" to adjudicate an action "to enforce the members' proxy and cumulative voting rights under the bylaws." (*Kaplan*, at pp. 719–720.)

We similarly conclude the language of section 7616 is broad enough to provide a procedural vehicle for vindicating plaintiffs' recall rights under the Association's bylaws, even absent an express reference to recall elections in the statute's text. Article VI, Section 3 of the bylaws authorizes a recall of the entire board of directors and makes the election of a new board part and parcel of the recall process: "The entire Board of Directors or any individual Director may be removed from office with or without cause at any time by a vote . . . at any regular or special meeting of members duly called, *and a successor or successors may then and there be elected to fill*

---

[12] Former Civil Code section 1354, subdivision (f) then provided for an award of prevailing party attorney fees in an action " 'to enforce the governing documents.' " (*Kaplan, supra*, 98 Cal.App.4th at p. 718, italics omitted.)

20

*the vacancy or vacancies thus created*."[13]  (Italics added.)  In adjudicating plaintiffs' claim under section 7616 to enforce this provision of the bylaws, the statute not only unambiguously directed the trial court to "determine the validity of [the new board's] election" (§ 7616, subd. (a)), but also authorized the court, "in conformity with the [recall provision of the] bylaws . . . , [to] determine the person entitled to the office of director . . . and [to] direct such other relief as may be just and proper" (*id.*, subd. (d)).  Because the trial court could not determine the validity of the election or "the person entitled to the office of director" without adjudicating the validity of the underlying recall election, it was "just and proper" for the court to enter an order under section 7616 confirming the recall election was valid. (§ 7616, subd. (d); see *Kaplan, supra,* 98 Cal.App.4th at p. 721.)

For much the same reason, we reject Barone's argument that he was not a proper defendant in this action.  Section 7616, subdivision (c) directs the superior court, "[u]pon the filing of the complaint, and before any further proceedings are had" to "enter an order fixing a date for the hearing . . . and requiring notice of the date for the hearing and a copy of the complaint to be served upon the corporation and *upon the person whose purported election or appointment is questioned* and upon any person (other than the plaintiff) whom the plaintiff alleges

---

13    As discussed in part 2, *ante*, while this provision of the bylaws requires "a vote of the majority of the votes held by the entire membership of record," that part of the provision violates section 7151, subdivision (e) and thus is displaced by the vote requirement in section 7222, subdivision (a)(2) for the removal of directors from a nonprofit mutual benefit corporation with 50 or more members.

21

to have been elected or appointed."  (Italics added.)  Barone contends this provision establishes the parties who may be named as defendants under section 7616, and, because he was neither elected nor appointed in the December 2019 election, he argues he could not be sued under the statute.[14]  We disagree.

As we have said and as the trial court correctly recognized, section 7616, subdivision (d) authorizes the court to "direct such other relief as may be just and proper" in connection with confirming the validity of a board election.  Here, the complaint alleged Barone, in his role as CEO and with the sanction of a majority of the former board, was engaged in frustrating the new board's efforts to fulfill its duties under the Association's bylaws.  Having confirmed the validity of the new board's election, the statute plainly authorized the trial court to enter an order confirming Barone had no authority to act on behalf of the Association, as was "just and proper" under the Association's

---

[14]  Barone also suggests the Association is not a proper plaintiff in this action, emphasizing that section 7616, subdivision (c) requires service of the complaint upon "the corporation."  However, as plaintiffs correctly argue, Barone fails to demonstrate how this purported error resulted in prejudice, given that Cohen and Allan (each a "member" and "person who had the right to vote in the election") undisputedly had standing under the statute.  (§ 7616, subd. (a).)

bylaws.  (§ 7616, subd. (d).)  Plaintiffs properly named Barone as a defendant in their section 7616 claim.[15]

[15]     Barone has moved for sanctions against plaintiffs' counsel and the trial court.  With respect to the lower court, he appears to argue the court reporter failed to provide him with electronic transcripts of the reported proceedings.  (See Cal. Rules of Court, rule 8.23 [authorizing sanctions for failure of a court reporter to perform a duty imposed by statute or these rules].)  Barone relies upon rule 8.144, which specifies the format requirements that apply "to clerks' and reporters' transcripts delivered in electronic form *and in paper form*."  (*Id.*, rule 8.144(b)(1), italics added.)  As the rule's reference to "paper form" suggests, there is no mandate that the reporter deliver an electronic transcript—a paper form is also acceptable.  (*Ibid.*; see also *id.*, rule 8.130 [specifying general requirements for delivery of reporter's transcript].)  Thus, Barone has not demonstrated sanctions are warranted under rule 8.23.

Barone's motion for sanctions against plaintiffs' counsel appears to relate largely to events that occurred before the underlying action or in connection with plaintiffs' efforts to enforce the terms of the challenged order, neither of which is properly before this court on a motion for appellate sanctions.  (See Cal. Rules of Court, rule 8.276(a) [specifying grounds for appellate sanctions].)  To the extent his motion raises issues relevant to the appeal, it simply repeats arguments that Barone made in his principal briefs, which we have rejected.  Moreover, as plaintiffs correctly argue, nothing in the relevant rule authorizes appellate sanctions against a respondent for defending an appeal.  (See *ibid.*)  The motion for sanctions is denied.

## DISPOSITION

The order is affirmed.  Plaintiffs the Lake Lindero Homeowners Association, Inc., Michael Allan, and Harriet Cohen are entitled to their costs.


EGERTON, J.

We concur:


EDMON, P. J.


LAVIN, J.

Filed 3/27/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LAKE LINDERO HOMEOWNERS ASSOCIATION, INC., et al.,<br><br>Plaintiffs and Respondents,<br><br>v.<br><br>CHRISTOPHER T. BARONE,<br><br>Defendant and Appellant. | B306164<br><br>Los Angeles County<br>Super. Ct. No.<br>20VECP00041<br><br>ORDER CERTIFYING<br>FOR PUBLICATION<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion in the above-entitled matter, filed on February 28, 2023, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports.

There is no change in the judgment.

_____

EGERTON, J.                    EDMON, P. J.                    LAVIN, J.