Filed 6/6/24  P. v. Dabbs CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANTHONY AVON DABBS, SR.,<br><br>    Defendant and Appellant. | D083428<br><br><br>(Super. Ct. No. BAF2201142) |


APPEAL from a judgment of the Superior Court of Riverside County, Walter Kubelun, Judge.  Affirmed.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Jennifer B. Truong, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Anthony Avon Dabbs, Sr., of assaulting a peace officer with force likely to cause great bodily injury (Pen. Code,[1] § 245(c)) and preventing an executive officer from performing his duty (§ 69). Dabbs appeals his convictions, asserting: 1) the trial court erred in giving CALCRIM No. 372;[2] 2) the trial court may have inadequately reviewed a police officer's personnel file; and 3) the trial court abused its discretion at the probation hearing and sentencing. We disagree and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In March 2020, Dabbs visited a store with two female friends who both shoplifted items from the retailer. A loss prevention officer (LPO) confronted the women, at which point one of them bit the LPO. Dabbs intervened, threatening to kill the LPO. Store employees summoned the police while Dabbs and his friends left the store. The police arrived and detained the women as they walked across the parking lot. Another officer went inside to review security footage and get initial statements from witnesses. Dabbs approached the officers to make a statement, then overheard a radio call requesting officers arrest Dabbs and his friends. After hearing the order over the radio, Dabbs ran from the police to his vehicle; Officer Preston pursued Dabbs.

When Dabbs arrived at his SUV, he opened the front driver-side door, started the vehicle, and shifted into reverse. Officer Preston came up and opened the front passenger door not knowing whether Dabbs had a weapon. The officer drew his sidearm, pointed it at Dabbs, and directed Dabbs to get

---

[1] Further undesignated statutory references are to the Penal Code.

[2] This instruction concerns fleeing the scene of a crime or after being accused of a crime.

2

out of the SUV and/or turn off the ignition. Simultaneously, Officer Preston determined the conflict with Dabbs could be resolved with less force than a firearm, so Officer Preston holstered his firearm and took out a taser. Perceiving this as an opportunity to escape, Dabbs depressed the SUV's accelerator. The SUV's front passenger door hit Officer Preston, dragging him as he held on. Officer Preston fired his taser into the SUV at Dabbs's torso before releasing his grip on the SUV door. The officer fell to the pavement and rolled away from the SUV's wheels. The taser prongs hit Dabbs in the temple and torso. Dabbs then fell from the SUV, which continued backward before hitting a pole. Officers arrested Dabbs.

The People charged Dabbs with robbery (§ 211; count 1), assaulting a police officer (§ 245, subd. (c); count 2), and resisting an executive officer (§ 69; count 3). The prosecution further alleged Dabbs suffered a previous strike conviction within the meaning of section 667, subdivisions (c) and (e)(1) and section 1170.12, subdivision (c)(1). After the preliminary hearing, the court held Dabbs to answer for counts 2 and 3, but found insufficient evidence supported count 1. After trial, a jury found Dabbs guilty on the two remaining counts. Dabbs later admitted his previous conviction under both the serious felony and strike prior statutes.

Before his sentencing Dabbs declined to participate in a probation department interview. At the sentencing hearing Dabbs moved to strike the five-year enhancement, which the judge denied.[3] The judge sentenced Dabbs to an 11-year prison term, consisting of the low term sentence of three years on count 2, doubled because of the strike prior, a 16-month concurrent

---

[3]     Dabbs's sentencing memo is unclear. However, we interpret it as seeking relief from both his prior's serious felony and strike consequences.

sentence for count 3, and the five-year enhancement for the serious felony consequences of his prior conviction.[4]

DISCUSSION

1. CALCRIM No. 372

CALCRIM No. 372 explains how a trier of fact may use evidence that a person fled a scene "immediately after the crime was committed" or after he or she "was accused of committing the crime." (CALCRIM No. 372.) This instruction, with little change, reflects section 1127c. Where a party relies on a defendant's flight to show guilt, the court "shall" appropriately instruct the jury. (§ 1127c.)

In this case, Dabbs contends we must reverse his conviction because the trial court prejudicially misinstructed the jury on flight from the scene of a crime. Dabbs argues that because the information used in the jury trial did not charge him with the theft crimes for which officers originally detained him at the store, no flight could occur as defined in the instruction. In the absence of the underlying crime from which he might flee, the instruction is error. We agree but find the error harmless.

We independently review claims of instructional error de novo. (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.) Where no federal constitutional violation is alleged, we apply the harmless error standard. (*People v. Watson* (1956) 46 Cal.2d 818, 835–836; *People v. Silva* (1988) 45 Cal.3d 604, 628.) Under *Watson*, an appellant must show a reasonable probability that a jury

---

[4] The court stated the "the conviction of the serious prior strike" added five years to Dabbs's prison commitment. We conclude the trial court intended to say serious felony prior. (See §§ 667, subd. (a)(1), 1192.7, subd. (c)).

would reach a result more favorable to him absent instructional error. (*Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069.)[5]

The People contend that the flight instruction was proper because Dabbs was accused of *a* crime and subsequently fled. They argue that they relied on "[Dabbs's] flight to argue that he was guilty of the offenses in this case." In support of this position, the People cite to section 1127c, which refers to "the commission of *a* crime" and to "*a* crime that has been committed." (Italics added.) They argue this means that to merit the flight instruction it was sufficient for Dabbs to be accused of *any* crime—in this case robbery—prior to running away. We disagree.

Flight requires "a purpose to avoid being observed or arrested." (*People v. Crandell* (1988) 46 Cal.3d 833, 869.) Therefore, CALCRIM No. 372 is proper if there is any evidence from which a juror could reasonably infer a defendant's awareness of his guilt or possible apprehension prompted his flight from the crime scene. (*People v. Cage* (2015) 62 Cal.4th 256, 285.) Here, Dabbs admits he heard the call over the police radio ordering officers to arrest him so he fled to avoid getting taken into custody.

However, the law and the CALCRIM pattern instruction contemplate that flight is relevant to show consciousness of guilt for a crime that was committed prior to the flight. For example, the instruction reads:

> "If the defendant fled [or tried to flee] (immediately after the crime was committed/[or] after (he/she) was accused of committing *the crime*), that conduct may show that (he/she) was aware of (his/her)

---

[5]     It appears Dabbs is not claiming any federal constitutional error occurred here requiring the more stringent *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*) standard: "[T]hat . . . the court must be able to declare a belief that [the instructional error] was harmless beyond a reasonable doubt." However, even if Dabbs raised the issue, we would reach the same result as we do under *Watson*.

5

guilt. If you conclude that the defendant fled [or tried to flee], it is up to you to decide the meaning and importance of the conduct. However, evidence that the defendant fled [or tried to flee] cannot prove guilt by itself." (CALCRIM No. 372, italics added.)

Use of the term "the crime" here means the charge for which defendant is standing trial. To trigger use of CALCRIM No. 372, evidence would need to support that someone accused defendant of a charged crime and it is from that accusation he or she is fleeing. The crimes before the jury in this case are not those from which defendant ran. Dabbs tried to flee law enforcement after hearing a radio call ordering his arrest following the store theft, not because anyone accused him of assaulting or resisting an officer. There existed no factual predicate to give this instruction.

We turn then to analyzing what, if any, error the judge committed by reading to the jury CALCRIM No. 372 as he modified it. The instruction given to the jury read:

"If the defendant fled, that conduct may show that he was aware of his guilt. If you conclude that the defendant fled, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled cannot prove guilt by itself."

Dabbs argues that the flight instruction as given allowed the jury to use Dabbs's flight to infer guilt for crimes he had not yet committed, namely, assaulting a police officer with his vehicle. We agree. However, given the circumstances here, we conclude any error in the instruction as read to the jury was harmless.

First, by referring to flight as an indication of guilt, the only reasonable interpretation is the act giving rise to the flight already happened. Conceptually, one flees to elude apprehension after committing a crime. We consider if there is a "reasonable likelihood" that the jury misapplied the instruction. (*People v. Smithey* (1999) 20 Cal.4th 936, 963.) We conclude no

6

rational jury could interpret awareness of one's guilt to apply to an act occurring during or after the flight.

Second, the jury heard overwhelming evidence against Dabbs; it is not reasonably probable that either omitting CALCRIM No. 372, or even giving this improperly modified version, would result in Dabbs receiving a more favorable result under either the *Chapman* or *Watson* standards. The People introduced video evidence of Dabbs entering the SUV, the brake lights turning off, and the speed with which Dabbs drove in reverse. Witnesses estimated the vehicle sped backwards at between 10 and 30 miles per hour. One person testified to the loud screeching noise made by the SUV while it accelerated in reverse. Finally, Officer Preston testified to seeing Dabbs press down on the accelerator. Officer Preston also described the SUV door hitting him and hanging on before dropping and rolling away from the tires to escape injury.

The jury could not reasonably apply the jury instruction to the offenses at issue and we must conclude that any rational jury would not use Dabbs's flight following an accusation of theft as consciousness of guilt for the later acts of assaulting or interfering in the duties of a police officer. Accordingly, Dabbs would not obtain a more favorable result absent this instructional error, and we necessarily conclude the error was harmless under both the *Chapman* and *Watson* standards.

2. *Pitchess* Proceedings

Dabbs filed a *Pitchess*[6] motion to determine whether Officer Preston's personnel file contained "complaints for aggressive behavior, violence or excessive force, improper police tactics, falsifying police reports, dishonesty

---

[6]     *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

and racial or class prejudice and misstating or fabricating facts in his police reports." The trial court reviewed the officer's personnel file and found no records requiring disclosure.

Dabbs asks us to independently review the sealed *Pitchess* proceedings to determine whether the trial court properly found no discoverable materials in Officer Preston's personnel file. (See *People v. Mooc* (2001) 26 Cal.4th 1216, 1226, 1228.) The People have no objection to our review. We examine the trial court's *Pitchess* ruling under the abuse of discretion standard. (*Id.* at p. 1228.)

After independently evaluating the sealed *Pitchess* proceeding, we conclude the trial court complied with the proper procedure and did not abuse its discretion when it found no discoverable materials in Officer Preston's personnel file.

3. Dabbs's Motion to Dismiss or Stay a Previous Strike and Serious Felony Prior

Before his sentencing, Dabbs brought a motion to strike enhancements pursuant to "section 1385 and [Senate Bill] 81.[7]" In 2015, Dabbs committed an *Estes*[8] robbery and was convicted in November 2017. The People alleged this previous crime as both a strike prior and a serious felony prior. Dabbs admitted the truth of the allegations under both theories.

---

7    Senate Bill 81 (2021–2022 Regular Session) refers to the amendment to section 1385 adding subsection (c). Section 1385, subsection (c) directs a court to dismiss enhancements if certain mitigants are proved unless clear and convincing evidence shows that such action would endanger public safety.

8    *People v. Estes* (1983) 147 Cal.App.3d 23.

At sentencing Dabbs moved the court to dismiss the serious felony prior and the strike prior allegations. Dabbs included in his motion factors he asked the court to consider in mitigation. The People opposed striking the five-year enhancement. They argued, "as a matter of law, there really isn't any mitigating circumstance to allow for [Dabbs] to have his nickel struck." In accordance with that position, they asked the Court to "uphold the nickel prior." The court declined to dismiss the strike or serious felony prior enhancements. Dabbs now contends the court did not understand its discretion to strike the five-year enhancement for a prior serious felony offense and understood only its power to strike the prior strike under *Romero*.[9]

Decisions granting or denying dismissal of a prior conviction are reviewed under the abuse of discretion standard of review. (*People v. Garcia* (1999) 20 Cal.4th 490, 498–499.) We examine the decisions to determine whether the rulings " 'fall[ ] outside the bounds of reason.' " (*People v. Williams* (1998) 17 Cal.4th 148, 162.) The party attacking the trial court's decision bears the burden of showing the trial court abused its broad sentencing discretion. (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977.) An abuse of discretion occurs where, for example, the trial court was not aware of its discretion to stay punishment of, or strike, a prior conviction. (*People v. Carmony* (2004) 33 Cal.4th 367, 378 (*Carmony*).)

Dabbs complains that the court misunderstood the nature of his motion and considered it only a motion to dismiss his prior strike. This may be because Dabbs's motion referred to, among other things, "a courts [*sic*] discretion to strike allegations of prior felony convictions under the three

---

9      *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

strikes law" and, specifically, section 1385, subdivision (a). During the hearing, the trial court discussed solely the issue of striking a prior strike pursuant to *Romero*.

However, the People's opposition papers focused on the five-year enhancement pursuant to section 667, subdivision (a)(1). The People also argued at sentencing that "as a matter of law, there really isn't any mitigating circumstance to allow for [Dabbs] to have his nickel struck" and asked the court to "uphold the nickel prior."

Dabbs contends this record reflects the court misunderstood its discretion to strike the five-year sentence for his serious felony prior enhancement. However, because "[w]e assume the trial court was aware of and followed applicable law," it is insufficient to point to a silent record as demonstrative of an abuse of discretion. (*People v. Coleman* (2024) 98 Cal.App.5th 709, 724.) This is especially true where, as here, the court received and considered Dabbs's sentencing memo and the People's written and oral responses which highlighted the serious felony prior issue. We conclude the court understood both Dabbs's motion and the scope of the court's discretion at the hearing.

In addition to arguing the court misunderstood his motion, Dabbs argues the court misapplied mitigating factors. Section 1385 contains nine mitigating factors for the court to consider for a motion brought to dismiss enhancements. (§ 1385, subd. (c).) Dabbs asserted there were multiple enhancements alleged and that the strike conviction was over five years old. He requested that the court consider that Officer Preston "was not injured," that his strike prior was an *Estes* robbery, and the nonviolent nature of the rest of his criminal record.

10

The court was aware Dabbs faced allegations related to section 667, subdivision (a)(1) for his prior serious felony offense and sections 667, subdivisions (c) and (e)(1), and 1170.12, subdivision (c)(1) for his strike prior, a "serious and violent felony." (§§ 667, subds. (c) & (e)(1), 1170.12, subd. (c).) The record before us reflects the court considered the age of the prior conviction and found that it was not older than five years. It is evident the court considered the required mitigating factors. Absent a showing on the record that the trial court failed to consider mitigating factors, Dabbs's argument amounts to a claim that the court did not give sufficient weight to the mitigating factors. In doing so, he asks us to reweigh the evidence, which is impermissible on review for an abuse of discretion. (*Carmony, supra*, 33 Cal.4th at p. 377.)

DISPOSITION

The judgment is affirmed.

RUBIN, J.

WE CONCUR:


McCONNELL, P. J.


BUCHANAN, J.

11